[No. B037989. Second Dist., Division Five, May 11, 1990.]

KELLER CONSTRUCTION COMPANY, INC., Plaintiff and Respondent, v.
KAZEM KASHANI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to *California Rules of Court*, rule 976.1, this opinion is certified for publication with the exception of parts III(B), III(C) and III(D).

COUNSEL

Hathaway, Perrett, Webster, Powers & Christman and Paul D. Powers for Defendant and Appellant.

Fried, King, Holmes & August and Brian James Bird for Plaintiff and Respondent.

OPINION

**TURNER, J.—**

## I. INTRODUCTION

Kazem Kashani (Kashani) appeals from a judgment confirming an arbitration award in favor of Keller Construction Company, Inc. (Keller).

Kashani contends: (1) as a sole general partner of a limited partnership, he is not bound by any arbitration agreement entered into between the partnership and a third party (Keller); (2) a court order compelling arbitration was a prerequisite to any proceeding in arbitration; (3) sole jurisdiction to hear Keller's petition to confirm the arbitration award was vested in the Ventura County Superior Court; and (4) it was an abuse of discretion to deny Kashani's motion for reconsideration of the order confirming the arbitration award. Because we find against Kashani on all counts, the judgment is affirmed.

## II. FACTS

On June 28, 1985, Keller entered into a written agreement with Ramada of Simi Valley Ltd., a California Limited Partnership (Ramada), to act as general contractor in the construction of a hotel. The contract was signed by Kashani, the sole general partner of Ramada, on behalf of the partnership.[1] The contract contained an arbitration provision as follows: "Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

A dispute later arose. Keller served a written American Arbitration Association demand for arbitration dated September 3, 1987, on Ramada and Kashani. Ramada filed for protection under federal bankruptcy laws, thereby automatically staying any proceedings against it. (11 U.S.C. § 362 (a).) The arbitration was scheduled to go forward as to Kashani. However, Kashani obtained a temporary restraining order from the United States Bankruptcy Court for the Southern District of California in San Diego preventing the arbitration from proceeding as to him. Kashani's motion for a preliminary injunction to prevent the holding of an arbitration pending the conclusion of the Ramada bankruptcy proceeding was denied, and the temporary restraining order was dissolved.

██ ██ ██ 2.) On April 13, 1988, the arbitration proceeded. Kashani appeared before the arbitrator, objected to arbitration on the ground that he

---

[1] The contract consisted of several documents including the construction plans. The first document was the 1977 edition of the American Institute of Architects Standard Form of Agreement Between Owner and Contractor which was labeled "AIA Document A101." This first document explicitly stated that the contract was between Keller and Ramada. When Kashani signed the first document he merely affixed his signature under the words "Ramada of Simi Valley Ltd." The second document was American Institute of Architects AIA Document A201 (1976 ed.) General Conditions of the Contract of Construction. On this second document, Kashani signed on behalf of Ramada.

was not personally subject to the arbitration agreement, and then left the proceeding without any further participation.[2] The arbitrator returned an award in favor of Keller and against Kashani in the sum of $1,417,456. Keller filed a petition to confirm the award pursuant to Code of Civil Procedure section 1285. Kashani filed points and authorities in opposition to the petition to confirm the award as well as a response to the petition. Kashani also filed a motion to strike the petition on the grounds that jurisdiction to rule on the petition has vested in the Ventura County Superior Court and that Kashani was not subject to the arbitrator's award because he was not a party to the arbitration agreement. The petition to confirm the award was granted. Kashani's motion to reconsider the confirmation order was denied. Pursuant to Code of Civil Procedure section 1287.4, a judgment was imposed against Kashani.

## III. DISCUSSION

### A. A sole general partner is bound by an arbitration agreement entered into by the limited partnership

■ Kashani contends that as the sole general partner of Ramada, he is not bound by the agreement to arbitrate because the contract with the arbitration clause was between the limited partnership and Keller. This precise issue has not been addressed by the California courts. However, this state's courts have addressed the issue of whether a nonsignatory to a contract is bound by an arbitration clause in other settings. Most of the prior California cases arise in the context of medical malpractice cases. In *Doyle v. Giuliucci* (1965) 62 Cal.2d 606, 607-608, 610 [43 Cal.Rptr. 697, 401 P.2d 1], the Supreme Court held that a minor was bound by her father's contract to arbitrate medical malpractice claims with a group health plan. In *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 702, 704, 709 [131 Cal.Rptr. 882, 552 P.2d 1178], the Supreme Court held that a medical services contract entered into by the Board of Administration of the State Employees Retirement System and a health care provider which required mandatory arbitration of malpractice claims by state employees was enforceable even though the employee had personally never agreed to arbitrate. In *Madden* the court concluded: "[A]n agent or other fiduciary

---

[2] Kashani's limited participation in the arbitration did not constitute a waiver of his right to later contest the arbitrator's jurisdiction over him. Kashani merely appeared and articulated his objection to the arbitration proceeding against himself personally. This case is distinguishable from *Kemper v. Schardt* (1983) 143 Cal.App.3d 557, 560 [192 Cal.Rptr. 46]. In *Kemper*, the party challenging the arbitrator's jurisdiction in a postarbitration proceeding to confirm the award had appeared at the arbitration proceeding, called witnesses and testified on his own behalf. (*Ibid.*) The submission of his entire case to the arbitrator was held to preclude a postarbitration challenge to the arbitrator's jurisdiction. (*Id.* at pp. 560-561.)

who contracts for medical treatment on behalf of [her or] his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice." (*Id.* at p. 709.) The *Madden* court held that the arbitration clause would be enforceable even though the patient had no knowledge of the mandatory arbitration provision. (*Id.* at p. 709, fn. 11.)

In *Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413, 415-416, 419 [152 Cal.Rptr. 491], Division Two of the Fourth Appellate District held that a husband's application for health insurance for himself and his wife which contained an arbitration clause required his wife to pursue her wrongful death action before an arbitrator. In *Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 893-894, 898-900 [190 Cal.Rptr. 649], the Third District Court of Appeal held that an infant's claim for prenatal malpractice was subject to his parents' agreement with a group health provider to arbitrate malpractice claims. In other words, the infant plaintiff's parents' agreement to arbitrate bound him even for events occurring prior to his birth. In *Herbert* v. *Superior Court* (1985) 169 Cal.App.3d 718, 720-721 [215 Cal.Rptr. 477], a member of the Teamster's Union enrolled his wife and children in a group health plan which required arbitration of medical malpractice disputes. This court held that the wrongful death action by the surviving spouse and children was subject to the arbitration agreement signed by the deceased union member. (*Id.* at p. 724.) In *Harris* v. *Superior Court* (1986) 188 Cal.App.3d 475, 478-479 [233 Cal.Rptr. 186], Division Two of this appellate district concluded that a nonsignatory doctor who benefited from an arbitration agreement between a patient and a health plan which provided the doctor's employer, a hospital, with patients was bound by the arbitration clause in the health care agreement. In *Gross* v. *Recabaren* (1988) 206 Cal.App.3d 771, 781 [253 Cal.Rptr. 820], Division Two of this appellate district held that a husband's agreement to arbitrate " 'any dispute as to medical malpractice' " extended to a nonsignatory wife's consortium loss claim.[3]

---

[3] In two cases, Division Four of this appellate district held that wrongful death claims by surviving spouses or children are not subject to an arbitration agreement under varying circumstances. In *Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606, 608, 609-610 [143 Cal.Rptr. 59], the court held that neither the surviving spouse, who signed an arbitration agreement with defendant hospital as decedent's agent and on her behalf, nor the surviving son was required to arbitrate a wrongful death cause of action arising from medical negligence against the hospital. In *Baker* v. *Birnbaum* (1988) 202 Cal.App.3d 288, 291-293 [248 Cal.Rptr. 336], the court held that a husband who was not a party to the arbitration agreement was not required to arbitrate his consortium loss cause of action. Because the present case is not a medical malpractice action, no useful purpose would be served by detailing the fashion in which *Rhodes* and *Baker* differ from other authority. However, these two cases constitute a minority view as to the rights of a nonsignatory to an arbitration agreement to pursue an action in the courts as distinguished from arbitration. They involve a narrow reading of the scope of the arbitration agreements solely in the context of a party's right to access to the courts in medical negligence cases.

In addition to the cases applying medical malpractice arbitration agreements to nonsignatories, California appellate courts have enforced arbitration clauses to noncontracting parties in the employment context. In *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826], the Supreme Court held that four agents of a party to the arbitration agreement were entitled to the benefit of the arbitration clause. In *Dryer*, the employer, a professional football team, was a contracting party. (*Id.* at p. 409.) The employee filed suit against both the employer and four other agents of the football team. (*Id.* at p. 418.) The court concluded that the four agents of the team who did not sign the contract with the mandatory arbitration clause were entitled as a matter of law to have their dispute with the plaintiff resolved by means of arbitration. (*Ibid.*) In *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 39, 40-41 [100 Cal.Rptr. 791], affirmed *sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973) 414 U.S. 117 [38 L.Ed.2d 348, 94 S.Ct. 383], a decision of Division Four of the First Appellate District, an employee of a brokerage house entered into an agreement with a stock exchange to arbitrate all disputes arising out of termination of employment with members of the exchange. Although there was no written arbitration agreement between the brokerage house employer which was a stock exchange member and the employee, the employee would have been required to arbitrate his claim against the employer because of his contract with the stock exchange except that the employee's claim fell within Labor Code section 229 allowing actions for due and unpaid wages without regard to the existence of a private agreement to arbitrate. (*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 24 Cal.App.3d at pp. 40-42, 43-45.) Similar results compelling arbitration were reached by the same court that decided *Ware* in *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 671-672 [97 Cal.Rptr. 811] and by this court in *Thomas v. Perry* (1988) 200 Cal.App.3d 510, 516 [246 Cal.Rptr. 156]. In *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1001-1002 [119 Cal.Rptr. 130], a decision of Division Two of this appellate district, a wife entered into a customer agreement which contained an arbitration clause with Dean Witter, a stock brokerage firm. The wife and her husband, who did not sign the customer agreement, filed suit against Dean Witter and one of its brokers who also had not signed the customer agreement. (*Ibid.*) The Court of Appeal held that the nonsignatory husband was bound by his wife's agreement to arbitrate and the individual broker who was also not a party to the arbitration agreement was entitled to the benefit of his employer's customer agreement with the wife. (*Id.* at p. 1004.)

Finally, one California court has enforced an arbitration agreement against unknown parties who were agents of a signatory to an arbitration agreement. In *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309,

1319 [231 Cal.Rptr. 315], Division Two of the Fourth Appellate District, in an opinion authored by Associate Justice Kaufman, confronted the novel question of whether an arbitration clause could be enforced because the complaint alleged the existence of fictitiously named defendants whose identities were not known. The fictitiously named Doe defendants were not parties to the contract containing the arbitration clause. (*Id*. at p. 1314.) The Court of Appeal noted that the complaint contained an allegation that all of the fictitiously named defendants were agents and employees of the named defendants who were parties to the contract or who had waived any objection to arbitration. (*Id*. at p. 1319.) Accordingly, the court held that the "Doe defendants presumably would be subject to the agreement." (*Ibid*.) Clearly, in varying circumstances, California courts have repeatedly enforced arbitration agreements against and in favor of persons who never agreed to arbitrate the dispute.

Pursuant to California statutory law, a general partner of a partnership is liable for "all . . . debts and obligations of the partnership . . . ." (Corp. Code, §§ 15015, subd. (b), 15509, subd. (1).) The general partners control the business of a limited partnership. (Corp. Code, § 15507, subd. (a).) The general partner is an agent of the limited partnership (Corp. Code, §§ 15009, subd. (1), 15509, subd. (1)) and is logically a beneficiary of any agreement entered into on behalf of the partnership. In sum, the relationship between a sole general partner and a limited partnership is such that the partner is bound by an agreement to arbitrate disputes entered into by the partnership.[4]

Courts of other jurisdictions have held that a general partner is bound by an arbitration agreement entered into by the partnership. In *Hartford Fin. Systems* v. *Fla. Software Serv., Inc.* (D.Me. 1982) 550 F.Supp. 1079, 1086, appeal dismissed, *Hartford Financial Systems* v. *Fla. Software Serv.* (1st Cir. 1983) 712 F.2d 724, 729, the general partners of a partnership which had entered into an arbitration agreement argued that they were not signatories to the agreement and therefore only the partnership itself could be compelled to arbitrate. In determining whether the general partners were bound by the arbitration agreement the court looked to state-law contract and partnership principles. (*Id*. at pp. 1086-1087.) The court held that the general partners who by statute were jointly liable for " 'all debts and obligations of the partnership' " were bound by the arbitration provision in the contract entered into by the partnership. (*Id*. at p. 1087.)

Similarly, in the case of *Application of Camhi* (1960) 28 Misc.2d 93 [208 N.Y.S.2d 162, 164-166], reversed on other grounds, 13 A.D.2d 752 [215

---

[4] Corporations Code section 15009, subdivision (3)(e), which prohibits a general partner from submitting a partnership claim to arbitration without the consent of all the general partners is inapplicable to this case. In the present case, the sole general partner signed the contract containing the arbitration clause.

N.Y.S.2d 406, 408-409], the New York County Supreme Court held that Camhi, a general partner, was bound by an arbitration agreement entered into by a document signed on behalf of the partnership by Camhi's partner. The court reasoned that Camhi was by law liable for all of the obligations of the partnership, and in addition had benefited from the agreement which called for arbitration. (*Id*. at pp. 165, 166.) In *Ferreri* v. *First Options of Chicago, Inc.* (E.D.Pa. 1985) 623 F.Supp. 427, 435, footnote 7, the court reached a similar result. In *Creative Securities Corp.* v. *Bear Stearns & Co.* (S.D.N.Y. 1987) 671 F.Supp. 961, 962-963, footnote 1, affirmed without opinion (2d Cir. 1988) 847 F.2d 834, the court assumed that nonsignatory general partners were subject to a partnership agreement to arbitrate. We find these cases to be persuasive.

To sum up, a sole general partner of a limited partnership under the facts of this case is subject to an arbitration agreement between the partnership and a third party. As the agent and a beneficiary of the partnership, to require him to be a party to the arbitration is consistent with what the late Justices Raymond Peters and Matthew Tobriner labled " 'a strong public policy in favor of arbitrations . . . .' " (*Madden* v. *Kaiser Foundation Hospitals, supra*, 17 Cal.3d at p. 706.)

### III. B.—III. D.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

### IV. Disposition

The judgment confirming the arbitration award in favor of Keller Construction Company, Inc., is affirmed and it shall recover its costs on appeal.

Lucas, P. J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 1990. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 222.