[No. A055582. First Dist., Div. Two. Feb. 24, 1993.]

ROBERT PIETRELLI, a Minor, etc., Plaintiff and Respondent, v.
GORDON PEACOCK, Defendant and Appellant.

## COUNSEL

Hassard, Bonnington, Rogers & Huber, James M. Goodman, Renee A. Richards, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Alan W. Sparer, Barbara A. Winters and Linda Q. Foy for Defendant and Appellant.

Giarardi & Keese, James B. Kropff and James G. O'Callahan for Plaintiff and Respondent.

## OPINION

**SMITH, Acting P. J.**—Defendant Gordon Peacock, M.D., appeals from an order denying his petition to compel arbitration of a claim brought by plaintiff Robert Pietrelli, a minor, for medical malpractice. The issue here is whether plaintiff was bound by an arbitration agreement which was signed by his mother at a time when plaintiff was both unborn and unconceived. We conclude that plaintiff was so bound and reverse the judgment of the trial court.

### BACKGROUND

On July 28, 1981, plaintiff's mother, Mrs. Jerri Pietrelli, who was not pregnant at the time, signed a contract in which she agreed to submit any dispute regarding medical services rendered by defendant to binding arbitration. The document, entitled "Arbitration Agreement" stated in pertinent part, "Any controversy between me and Doctor concerning medical care *and any such controversy between Doctor and persons, born or unborn, on behalf of whom I have the power to contract* shall be submitted to FINAL AND BINDING ARBITRATION in accordance with the procedure set out in Article 2 below." (Italics added.) Mrs. Pietrelli subsequently became pregnant and received obstetric care from defendant.

Plaintiff was born on October 3, 1982. On September 12, 1990, plaintiff, through Mrs. Pietrelli as his guardian ad litem, filed a complaint against defendant for medical malpractice, alleging negligence in the care and treatment he received from defendant at or around the time of his birth.

Defendant responded by filing a petition to compel arbitration pursuant to the arbitration agreement quoted above. Plaintiff opposed the motion on the principal ground that he was not a party covered by the agreement. In its order denying the petition, the court "found that the language in the Arbitration Agreement did not bind children not yet conceived at the time the Arbitration Agreement was signed, and that reference to 'persons, born or unborn,' did not pertain to those not yet conceived."

Defendant appeals from the order.

## APPEAL

■ "This state has a strong public policy favoring arbitration over litigation as a speedy and relatively inexpensive means of dispute resolution which eases court congestion. [Citations.]" (*Gross* v. *Recabaren* (1988) 206 Cal.App.3d 771, 775 [253 Cal.Rptr. 820] (*Gross*); see also *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) This policy is embodied Code of Civil Procedure section 1295 (all undesignated statutory references are to that code), which was added as part of the Medical Injury Compensation Reform Act (MICRA). (Stats. 1975, Second Ex. Sess. 1975-1976, chs. 1-2, pp. 3949-4007.) The purpose of section 1295 was to encourage and facilitate arbitration of medical malpractice disputes. (*Gross, supra,* 206 Cal.App.3d at p. 776.)

Subdivision (c) of section 1295 sets forth certain requirements for agreements to arbitrate medical malpractice disputes, and further states that an arbitration agreement which complies with its requirements "governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice . . . ." There is no question here that the services which are the subject of this action fell within the parameters of section 1295.

■ We therefore turn to the question of whether plaintiff is a *party* bound by the agreement his mother signed for the rendition of those services. ■ Because the scope of an arbitration agreement is a matter of agreement between the parties, the court should attempt to give effect to their intentions in light of the usual and ordinary meaning of the language used and the circumstances under which the agreement was made. (*Victoria* v. *Superior Court* (1985) 40 Cal.3d 734, 744 [222 Cal.Rptr. 1, 710 P.2d 833]; *Gross, supra,* 206 Cal.App.3d 771, 777.) In this case, Mrs. Pietrelli signed a contract binding to arbitration not only herself but "and persons, *born or unborn,* on behalf of whom I have the power to contract . . . ." (Italics added.)

■ It has long been the law that a parent has the power to bind a minor child to arbitration of claims arising from the minor's health care contract. (*Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606, 609-610 [43 Cal.Rptr. 697, 401 P.2d 1].) This authority is implied from the parent's duties and rights as the child's guardian. (*Id.*, at p. 610.) Civil Code section 29 confers on a conceived child the legal right to recover for injuries caused by the wrongful act or neglect of another at or prior to his birth (*Norman* v. *Murphy* (1954) 124 Cal.App.2d 95, 97-98 [268 P.2d 178]; *Scott* v. *McPheeters* (1939) 33 Cal.App.2d 629, 632-637 [92 P.2d 678]), although the right does not accrue until the child is born alive. (*Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 897 [190 Cal.Rptr. 649] (*Wilson*).) Accordingly it has been held that a mother may validly bind her expected child to arbitration of all claims for negligence in prenatal and postnatal medical treatment. (*Bolanos* v. *Khalatian* (1991) 231 Cal.App.3d 1586, 1591 [283 Cal.Rptr. 209].)

■ Plaintiff claims, however, that this case is different because he was neither born *nor conceived* at the time. He argues that his mother can have no power to bind to arbitration someone who does not exist as a legal entity at the time of the contract. We disagree.

It is settled that nonsignatories may be bound by arbitration agreements executed on their behalf. (See discussion and cases compiled in *Keller Construction Co.* v. *Kashani* (1990) 220 Cal.App.3d 222, 225-228 [269 Cal.Rptr. 259].)[1] Moreover, in other contexts the law recognizes the ability of a party to act on behalf of and affect the rights of persons who have not yet come into existence. For example, a testamentary bequest to a class of persons applies to all persons who answer the class description at the time the devise is to take effect, regardless of whether they are born before or after the testator's death. (See Prob. Code, § 6150; *Estate of Stanford* (1957) 49 Cal.2d 120, 125-127 [315 P.2d 681].) And section 373.5 provides explicitly for the appointment of a guardian ad litem to represent the interests of persons who are designated as beneficiaries under the terms of a written instrument, but are not ascertained or are *not yet in being*.

In *Wilson, supra*, 141 Cal.App.3d 891, the court held that plaintiff's claim for prenatal injuries was binding on him even though the agreement was signed by plaintiff's mother prior to his conception. There, the mother

---

[1]Plaintiff cites a pre-MICRA case, *Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606 [143 Cal.Rptr. 59], as authority to the contrary. To the extent that *Rhodes* suggests that a patient has no authority to bind nonsignatories to an arbitration agreement without their consent, it is out of step with both the overwhelming weight of California authority and the strong public policy favoring arbitration in medical malpractice cases heralded by the enactment of section 1295. (See *Keller Construction Co.* v. *Kashani, supra*, 220 Cal.App.3d 222, 226, fn. 3; *Gross, supra*, 206 Cal.App.3d 771, 775-776, 778-780.)

enrolled herself in a prepaid health plan under which she agreed to binding arbitration of all medical malpractice claims. Under the terms of the Kaiser Foundation Health Plan, newborn children of plan members automatically become members at birth. The court held that by electing to and receiving obstetric care under the health plan agreement, the mother impliedly agreed to subject both herself and her unborn fetus to its arbitration provisions. In addition, since plaintiff became a member of Kaiser at the moment of his birth and had no cause of action until his birth, his claim for prenatal injuries was governed by the arbitration agreement. (*Id.*, at pp. 898-899.)

The same principles apply here. The arbitration agreement bound both Mrs. Pietrelli and "persons unborn" whom she had authority to bind. At the moment of his conception, plaintiff became an "unborn person" within the definition set forth in the contract. As in *Wilson*, by electing to receive the obstetric services provided for under the agreement, Mrs. Pietrelli impliedly agreed to arbitration for her unborn child. And since plaintiff had no cause of action before he was conceived, the election became binding on him at birth. As stated in *Wilson*, "whether a parent makes an election for the receipt of medical services on behalf of an unborn or already born child, such election must be binding regarding the terms of agreement pursuant to which the services were rendered." (*Id.*, at p. 899, fn. omitted.)

We conclude that plaintiff was an "unborn person" within the meaning of the arbitration agreement signed by his mother. Accordingly, the trial court erred in refusing to compel arbitration under the terms of the contract.

DISPOSITION

The order denying the petition to compel arbitration is reversed with directions to enter a new order granting the petition.

Benson, J., and Phelan, J., concurred.