175 Cal.App.4th 227 (2009)
ALEJANDRA RUIZ et al., Plaintiffs and Respondents,
v.
ANATOL PODOLSKY, Defendant and Appellant.
No. G040843.
Court of Appeals of California, Fourth District, Division Three.
June 24, 2009.
*231 Schmid & Voiles and Denise H. Greer for Defendant and Appellant.
Cornelius P. Bahan, Inc., and Cornelius P. Bahan for Plaintiffs and Respondents.

OPINION
O'LEARY, J.
This appeal arises from the trial court's denial of a physician's petition to compel arbitration of the wrongful death action brought by the adult child heirs of his patient, Rafael Ruiz (Rafael).[1] Alejandra Ruiz *232 (Wife) and the four adult children, Alejandro, Ana, Diana, and Samuel (collectively referred to as the Adult Children) filed an action against Anatol Podolsky, an orthopedic surgeon, and other health care providers (who are not parties to this appeal). Podolsky sought to enforce the arbitration agreement he had with Rafael against the surviving heirs. Wife conceded she was bound by the arbitration agreement, but she and the Adult Children argued the Adult Children were not bound to arbitrate, and the matter should remain in superior court to prevent conflicting rulings. The trial court granted the petition to compel arbitration as to Wife but denied the petition as to the Adult Children. On appeal, Podolsky argues Rafael had the broad authority to waive the Adult Children's right to a jury trial of their independent wrongful death claims simply because Rafael's spouse conceded she was bound to the agreement and the wrongful death statute requires litigation of the action in one forum.
In California, there is a split of authority as to the scope of a patient's authority to bind his or her spouse and adult children to an arbitration agreement. One line of cases beginning with Rhodes v. California Hospital Medical Center (1978) 76 Cal.App.3d 606 [143 Cal.Rptr. 59] (Rhodes), holds wrongful death is not a derivative cause of action and therefore a patient cannot bind nonsignatory heirs bringing a wrongful death claim absent a preexisting agency-type relationship. Another line of cases following Herbert v. Superior Court (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477] (Herbert), suggests there are important public policy reasons to infer patients being treated have the broad authority to bind nonsignatory heirs to a medical arbitration agreement, especially in cases of wrongful death.
Based on our review of the authority in California and other jurisdictions, we conclude California's wrongful death statute does not create a derivative action and therefore Rafael lacked authority (express or implied) to bind Wife or the Adult Children to the physician-patient arbitration agreement he signed simply to receive treatment for himself from Podolsky. Principles of equity and basic contract law outweigh the convenience of litigating in one forum and the public policies favoring arbitration. Accordingly, we hold the trial court correctly concluded the Adult Children cannot be compelled to arbitrate their wrongful death claims.
As for Wife, it appears she was not bound to the arbitration agreement, but she invited error on this issue in the trial court by conceding she must arbitrate her claim. This court cannot revisit the issue because Wife failed to appeal from the court's order compelling arbitration of her claim. Consequently, this case presents a unique legal quagmire. On one hand, the wrongful death statute ordinarily calls for "one action" to be jointly maintained by the heirs. On the other hand, Code of Civil Procedure section 1281.2, *233 subdivision (c),[2] eliminates any discretion to disregard Wife's purported arbitration agreement with the health care provider, despite the possibility of inconsistent results inherent in litigating the same wrongful death action in two forums. Thus, we have a case in which Wife can be compelled to arbitrate her claim; the Adult Children cannot be forced to arbitrate their claims. A defendant ordinarily is given the protection of litigating in one forum; however, we conclude Podolsky has waived the protections offered by the statutorily created "one action rule" for wrongful death cases by filing his petition to compel arbitration, causing the lawsuit to be split into two forums. All may end well, but this is likely not the result Podolsky envisioned. He now risks the possibility of inconsistent results and additional expense by litigating the same claim in two forums. He has the option to waive his right to arbitrate Wife's claim or proceed. The decision is his, not ours. The order is affirmed.

FACTS
In July 2007, Wife and the Adult Children filed a complaint against Podolsky and other health care professionals alleging wrongful death and medical malpractice. They maintained the defendants failed to adequately identify and treat Rafael's hip fracture resulting in complications, and eventually his death.
Podolsky filed an answer to the complaint, and attached a copy of the arbitration agreement he had made with Rafael. A few months later, Podolsky filed a petition to compel arbitration. Wife conceded she was subject to the arbitration agreement. However, she and the other heirs argued that because only one plaintiff was bound to arbitrate, the court should allow the parties to proceed in the trial court to avoid inconsistent verdicts, unnecessary delay, multiple actions, and duplicative discovery. Podolsky responded the Adult Children were "swept up" into the arbitration agreement along with Wife due to the "one action rule" for wrongful death suits.
The trial court disagreed. It denied the petition as to the Adult Children, and granted the petition as to Wife. The court stayed the superior court "action pending resolution of arbitration to avoid the possibility of inconsistent rulings." It set a date by which arbitration must be completed and also scheduled a postarbitration status conference date. Podolsky appealed the order denying arbitration. Wife did not appeal.

*234 DISCUSSION

A. Standard of Review

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the [trial] court's order is based on a decision of fact, then [the reviewing court] adopt[s] a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" (Robertson v. Health Net of California, Inc. (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].)
Like many physicians, it was Podolsky's practice to offer new patients an arbitration agreement to sign before being examined. Rafael signed the agreement when he went to Podolsky's office, he was not examined that day, but he was asked to return 10 days later. The agreement provided, in pertinent part, "It is the intention of the parties that this agreement bind all parties whose claims may arise out of or relate to the treatment or services provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim." (Boldface omitted.) The relevant facts and arbitration agreement's language are undisputed. Accordingly, we independently review the agreement's effect. (Coast Plaza Doctors Hospital v. Blue Cross of California (2000) 83 Cal.App.4th 677, 684 [99 Cal.Rptr.2d 809].)

B. General Law Regarding Wrongful Deaththe One Action Rule

(1) A wrongful death cause of action is a statutory claim (§§ 377.60-377.62). "In some states, the decedent's right of action for his or her injuries survives, and the recovery goes to the decedent's estate. However, the usual statute creates a new cause of action in favor of the heirs as beneficiaries. [California's] current statute [(§ 377.60)] . . . lists specific persons entitled to sue for wrongful death . . . . The cause of action is based upon the plaintiffs' own independent pecuniary injury suffered by loss of the decedent, and is distinct from any action that the decedent might have maintained had he or she survived. [Citations.]" (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1378, pp. 798-799; Horwich v. Superior Court (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927] [wrongful death in California creates new cause of action that is not derivative but distinct from any action that deceased might have maintained].)
(2) The wrongful death claim is unique because unlike other tort actions, "Any recovery is in the form of a lump sum verdict determined according to each heir's separate interest in the decedent's life [citation], with each heir *235 required to prove his or her own individual loss in order to share in the verdict. (§ 377.61 . . . .) Because a wrongful death action compensates an heir for his or her own independent pecuniary losses, it is one for `personal injury to the heir.' [Citations.] Thus, in a wrongful death action the `injury' is not the general loss of the decedent, but the particular loss of the decedent to each individual claimant." (San Diego Gas & Electric Co. v. Superior Court (2007) 146 Cal.App.4th 1545, 1550-1551 [53 Cal.Rptr.3d 722], citation omitted (San Diego Gas & Electric Co.).)
"A wrongful death action is considered joint, single and indivisible, meaning that all heirs should join in a single action and there cannot be a series of suits by heirs against the tortfeasor for their individual damages. [Citation.] `The action is joint only insofar as it is subject to the requirement that all heirs should join in the action and that the damages awarded should be in a lump sum.' [Citation.] As explained by our high court, the wrongful death statute `is a procedural statute establishing compulsory joinder and not a statute creating a joint cause of action.' [Citation.] Accordingly, each heir has a `personal and separate cause of action' and the expiration of the statute of limitations as to one heir does not impact the timely wrongful death claims of other heirs. [Citation.]" (San Diego Gas & Electric Co., supra, 146 Cal.App.4th at p. 1551.)

C. Courts Can Infer Waiver of the One Action Rule

(3) As discussed above, "Generally, there may be only a single action for wrongful death, in which all heirs must join. There cannot be a series of such suits by individual heirs. [Citation.] This is the so-called one action rule. One of its effects is that settlement of a wrongful death case instituted by only some of the heirs will bar others from prosecuting another action against the same defendant. (Mayerhoff v. Kaiser Foundation Health Plan, Inc. (1977) 71 Cal.App.3d 803, 805-807 [138 Cal.Rptr. 319] . . . [affirming dismissal of dependent parents' separate action following settlement of spouse and children's action].) After settlement of the action, heirs who were neither voluntarily nor involuntarily joined in it must instead seek a remedy against the settling heirs, not the defendant. (Smith v. Premier Alliance Ins. Co. (1995) 41 Cal.App.4th 691, 697 [48 Cal.Rptr.2d 461] (Smith).)" (Gonzales v. Southern Cal. Edison Co. (1999) 77 Cal.App.4th 485, 489 [91 Cal.Rptr.2d 530] (Gonzales).)
"The one action rule, however, is not jurisdictional, and its protections may be waived. [Citations.] For example, `a wrongful death settlement will not terminate the action if the settlement includes less than all of the named heirs. By settling with less than all of the known heirs, the defendant waives the right to face only a single wrongful death action and the nonsettling heirs *236 may continue to pursue the action against the defendant.' (Smith, supra, 41 Cal.App.4th at p. 698.) Similarly, if the defendant settles an action that has been brought by one or more of the heirs, with knowledge that there exist other heirs who are not parties to the action, the defendant may not set up that settlement as a bar to an action by the omitted heirs. [Citations.]" (Gonzales, supra, 77 Cal.App.4th at p. 489.)
(4) As explained by one court, the one action rule was designed to provide a defendant protection from successive suits by heirs of whose existence the defendant had not known. (Valdez v. Smith (1985) 166 Cal.App.3d 723, 727-728 [212 Cal.Rptr. 638].) But when the defendant is aware the heir is not included in the suit, the defendant "had knowledge that the suit was not the type contemplated under the statute. [Citations.] Defendants could have made a timely objection and had the action abated or at least could have made plaintiff a party to the action. [Citations.] . . . [T]he failure of defendants to do so should not estop the plaintiff from bringing his rightful claim for wrongful death." (Id. at p. 728.) The Valdez court concluded: "We hold that when, as in the present case, the defendant in a pending action has actual knowledge of the existence, identity and status of an omitted heir and fails to have said omitted heir made a party to the action, a settlement and dismissal with prejudice of the pending action will not bar a subsequent action by the omitted heir against the defendant." (Id. at p. 731.) The defendants had "waived their right to insist upon a single action joined in by all the heirs." (Ibid.; accord, Smith, supra, 41 Cal.App.4th at p. 697 ["if the defendant had knowledge of the omitted heir, but did not attempt to abate the action or join the heir, the defendant waives the right to a single wrongful death action . . . ."].)
The facts of this case are sufficiently similar to those of Valdez. Podolsky does not dispute he is aware of the identities of all Rafael's heirs. As will be explained in greater detail below, Podolsky has the legal option of compelling one heir (Wife) to arbitration but not the others. He has two choices. He may choose to waive his right to arbitrate Wife's claim and join it with the other wrongful death claims in superior court. If he chooses not to join Wife in the trial court, he will have waived the protections offered by the one action rule. As explained anon, the convenience of litigating in one forum for one party does not trump another party's right to a jury trial of his or her own, independent action.

D. Rules Regarding Contractual Arbitration

(5) "Public policy favors arbitration as an expedient and economical method of resolving disputes, thus relieving crowded civil courts. However, arbitration assumes that the parties have elected to use it as an alternative to *237 the judicial process. [Citation.] Arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to arbitrate them. [Citations.] Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement. `The right to arbitration depends on a contract.' [Citations.]" (County of Contra Costa v. Kaiser Foundation Health Plan, Inc. (1996) 47 Cal.App.4th 237, 244-245 [54 Cal.Rptr.2d 628] (County of Contra Costa).)

E. When Are Nonsignatory Parties Bound to an Arbitration Agreement in California

(6) "The California cases binding nonsignatories to arbitrate their claims fall into two categories. In some cases, a nonsignatory was required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement. In other cases, the nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim." (County of Contra Costa, supra, 47 Cal.App.4th at p. 242; see also § 1281 [right to arbitration depends on contract].) Podolsky argues Wife and the Adult Children fall into the second category because Rafael bound Wife to arbitration and her wrongful death action cannot be tried in a different forum from the other nonsignatory heirs. We disagree. Absent one of the recognized exceptions (a benefit conferred to a third party beneficiary arrangement or a preexisting relationship) Rafael had no authority to bind his nonsignatory Adult Children to the arbitration agreement Rafael signed with a physician for his personal medical treatment.
(7) "Appellate courts have stated that arbitration agreements are enforced with regularity against nonsignatories. [Citation.] However, a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement is a common factor in these cases." (County of Contra Costa, supra, 47 Cal.App.4th at p. 242.) For example, it is well settled, "Minors are bound by a parent's agreement to arbitrate medical malpractice claims filed against a health care provider. (§ 1295, subd. (d); Doyle v. Giuliucci (1965) 62 Cal.2d 606, 609-610 [43 Cal.Rptr. 697, 401 P.2d 1]; see Pietrelli v. Peacock (1993) 13 Cal.App.4th 943, 947 [16 Cal.Rptr.2d 688] [preconception contract binds child]; Bolanos v. Khalatian (1991) 231 Cal.App.3d 1586, 1591 [283 Cal.Rptr. 209] [infant claiming in utero injuries]; Wilson v. Kaiser Foundation Hospitals (1983) 141 Cal.App.3d 891, 896-900 [190 Cal.Rptr. 649].)" (County *238 of Contra Costa, supra, 47 Cal.App.4th at pp. 242-243.) Similarly, a person who is authorized to act as the patient's agent can bind the patient to an arbitration agreement. (Hogan v. Country Villa Health Services (2007) 148 Cal.App.4th 259, 265-268 [55 Cal.Rptr.3d 450].)
"Employees who did not agree to arbitrate claims must do so when an employer acting on their behalf enters into a medical services contract containing an arbitration clause. (Madden v. Kaiser Foundation Hospitals (1976) 17 Cal.3d 699, 702-709 [131 Cal.Rptr. 882, 552 P.2d 1178] [statutes granted state employers implied authority to contract for medical plan on employees' behalf]; Harris v. Superior Court (1986) 188 Cal.App.3d 475, 477 [233 Cal.Rptr. 186] [plaintiff asserts right to arbitrate].) Likewise, the general partner of a limited partnership is bound by the arbitration agreement entered into by the partnership and a third party. (Keller Construction Co. v. Kashani (1990) 220 Cal.App.3d 222, 225-229 [269 Cal.Rptr. 259] [`a nonsignatory doctor who benefited from an arbitration agreement between a patient and a health plan which provided the doctor's employer, a hospital, with patients was bound by the arbitration clause in the health care agreement'].)" (County of Contra Costa, supra, 47 Cal.App.4th at p. 243.) One court recently summarized these exceptions as follows: "`The common thread of all the above cases is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement. In the absence of such a relationship, courts have refused to hold nonsignatories to arbitration agreements. . . .' [Citations.]" (Buckner v. Tamarin (2002) 98 Cal.App.4th 140, 142-143 [119 Cal.Rptr.2d 489] (Buckner).)

F. Authority to Bind Spouses and Adult Children

The body of California authority concerning the binding effect of arbitration agreements on nonsignatory spouses and adult children is difficult to decipher. Essentially, there are two lines of cases that take very different approaches to resolving the issue.
The divergent paths can be clearly seen by first examining two appellate decisions, decided the same year, deciding the same issue, and relying on the two lines of wrongful death cases. Both of the 1988 opinions involved the issue of whether a spouse who signed a patient-physician agreement requiring arbitration of medical malpractice claims also binds to arbitration the nonsignatory spouse who brings a loss of consortium claim. In Baker v. Birnbaum (1988) 202 Cal.App.3d 288, 291-293 [248 Cal.Rptr. 336] (Baker), the court held the husband who was not a party to the arbitration agreement was not required to arbitrate his loss of consortium claim. Prior to the wife's breast implant surgery, she signed a patient-physician arbitration agreement. The Baker court determined the agreement did not bind her nonsignatory spouse *239 when the services for which she had contracted were for only herself. (Id. at p. 292.) In reaching this conclusion, the Baker court relied exclusively upon its earlier decision in Rhodes, supra, 76 Cal.App.3d 606, holding a husband and son were not required to arbitrate a wrongful death action where the patient (wife and mother) had signed an arbitration agreement, and the husband had also signed such an agreement acting as her agent. Husband did not sign the arbitration agreement for himself. The Rhodes court reasoned, "We are aware of the strong public policy in favor of arbitration as a means of resolving controversies [citation], but that policy does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement. The right to arbitration depends on a contract. (... § 1281.) Neither [husband] nor the son have ever contracted to forego their rights to have their cause of action determined by a jury in a normal judicial proceeding. Although a wrongful death action must rest on a cause of action in the decedent, we cannot hold that the decedent's agreement to arbitrate her possible cause of action is effective to bar the constitutional and procedural rights of the decedent's heirs in their own, independent action." (Rhodes, supra, 76 Cal.App.3d at pp. 609-610.)
A few months after the Second District, Division Four published the Baker decision, Division Two of the same appellate district reached a contrary conclusion in Gross v. Recabaren (1988) 206 Cal.App.3d 771, 781 [253 Cal.Rptr. 820] (Gross). The Gross court held husband's physician-patient agreement to arbitrate "`any dispute as to medical malpractice'" extended to a nonsignatory wife's loss of consortium claim. Rather than follow the Baker decision, the Gross court decided to follow the approach taken in an older wrongful death case from Division Five of the Second District, Herbert, supra, 169 Cal.App.3d 718. The Gross court explained, "In resolving this issue we are in the unhappy position of having to choose between the decisions of two of our colleagues, Baker[, supra,] 202 Cal.App.3d 288 . . . . and Herbert[, supra,] 169 Cal.App.3d 718 ..., appeals decided by this district's divisions four and five respectively. Though the cases are distinguishable on a number of points (see the concurring opinion of Justice George in Baker, supra, 202 Cal.App.3d at p. 294), their holdings appear to reflect an irreconcilable divergence of views extending beyond any factual differences." (Gross, supra, 206 Cal.App.3d 771, 778-779.)[3]
Although Herbert involved an arbitration agreement entered when husband enrolled himself and his wife in a group medical plan, the Gross court *240 applied its reasoning to a situation involving one spouse's physician-patient agreement for medical care. The court concluded permitting a patient to submit any dispute to arbitration (including those of a spouse) is (1) consistent with the language of the statutes governing the contents of medical arbitration contracts (§ 1295); (2) "essential to further the goals of the legislation and the judicially declared preference in favor of joining loss of consortium and negligence claims"; (3) a "safeguard [to] the physician-patient relationship; and" (4) a way to "preserve important privacy rights of the patient." (Gross, supra, 206 Cal.App.3d at p. 781.)
We agree with the observation in Gross that the split of authority on this issue reflects "irreconcilable divergence of views [that extend] beyond any factual differences." (Gross, supra, 206 Cal.App.3d at p. 779.) We found it helpful to examine the evolution of these two lines of cases to better understand the different legal viewpoints and approaches to resolve the issue.

G. Case Law Evolution

As noted above, Rhodes, decided in 1978, was the first case to consider the issue of whether one spouse can bind the other spouse to a physician-patient arbitration agreement. (Rhodes, supra, 76 Cal.App.3d at p. 608.) The court concluded the cases concerning a parent's "broad powers" to make contracts for the benefit of a minor child were not helpful. (Id. at p. 609.) It reasoned, "[H]ere we are not concerned with any contract by a person having protective powers such as those inherent in the parent-child situation." (Ibid.) The court recognized wrongful death is not derivative but distinct from any action the deceased may have made. It concluded, "[W]e cannot hold that the decedent's agreement to arbitrate her possible cause of action is effective to bar the constitutional and procedural rights of the decedent's heirs in their own, independent action." (Id. at pp. 609-610.)
The following year Hawkins v. Superior Court (1979) 89 Cal.App.3d 413, 415-416 [152 Cal.Rptr. 491] (Hawkins), was published holding a husband's application for Kaiser health insurance for himself and his wife, which contained an arbitration clause, required his wife to pursue her wrongful death action in arbitration. Although the wife never personally agreed to the arbitration provision, the court held the case was distinguishable from Rhodes, which "involved an individual patient contracting for medical services for herself whereas in the instant case the husband contracted for health care services for himself and his wife . . . . Spouses have mutual obligations to care for and support the other [citation], including the obligation to provide medical care [citations], and they occupy a fiduciary relationship to each other. [Citations.] Decedent had the power to contract for the health plan for himself and his wife and . . . . implicit in that power is the implied authority to *241 agree for himself and his wife to arbitrate claims arising out of medical malpractice." (Hawkins, supra, 89 Cal.App.3d at pp. 418-419.) It analogized the purchase of a spouse's health insurance to those cases holding a parent has authority to contract for a minor child's medical services and bind the child to arbitration (Doyle v. Giuliucci, supra, 62 Cal.2d at p. 610), and an employer may bind those enrolled in the employees' group health care contract containing an arbitration provision (Madden v. Kaiser Foundation Hospitals, supra, 17 Cal.3d at p. 709).
Next came Herbert, supra, 169 Cal.App.3d 718, which offered a philosophically different approach to the issue. That case involved a member of the Teamster's union who enrolled his wife and five minor children in a Kaiser group health plan, which required arbitration of medical malpractice disputes. After husband died, the widow and her eight children (the five minors enrolled with Kaiser plus three adult children who were not) filed a wrongful death action against the group health care provider. The court determined the three adult children who were not members of the plan were nevertheless bound by it. (Id. at pp. 724-725.)
The Herbert court reasoned, "The claims of [wife] and the five minor children are governed by Hawkins[, supra,] 89 Cal.App.3d 413 ... (a case which also involved a Kaiser plan)." (Herbert, supra, 169 Cal.App.3d at p. 722.) The Herbert court recognized the Hawkins court left undecided the issue of "whether the arbitration provision of the plan agreement is binding upon adult heirs who are not members of the plan. [Citation.] We conclude that the arbitration contract executed by Mr. Herbert bound both the member and nonmember heirs to arbitrate their claims." (Id. at p. 724.)
The Herbert court offered many different policy reasons to support its conclusion, implicitly rejecting the Rhodes court's straightforward statutory analysis approach, recognizing wrongful death is the decedent's heirs' own, independent action. (Herbert, supra, 169 Cal.App.3d at pp. 724-727; see Rhodes, supra, 76 Cal.App.3d at p. 610.) The Herbert court explained, "Important to our determination of this issue is an analysis of the agreement and the legal policies supporting it. The agreement was negotiated by the Teamsters, of which decedent was a member, with Kaiser for the benefit of the union's members. It is similar in nature to the agreement reviewed in Madden . . ., supra, 17 Cal.3d 699 [employee bound by group medical services contract entered into between the employer and Kaiser]." (Herbert, supra, 169 Cal.App.3d at p. 724.) The Herbert court noted the Supreme Court had concluded an arbitration contract such as the one in Madden was not an adhesion contract because the agreement was "`a product of negotiations between parties possessing parity of bargaining strength.'" (Id. at p. 724, quoting Madden, supra, 17 Cal.3d at p. 703.)
*242 In addition to the above logic, the Herbert court offered the following laundry list of reasons that support binding the nonsignatory adult heirs: (1) The action cannot be split into two different tribunals because "a single cause of action exists in the heirs for the wrongful death of a decedent"; (2) a wrongful death action is "technically a separate statutory cause of action" but "in a practical sense" it is "derivative of a cause of action in the deceased"; (3) "it is obviously unrealistic to require the signatures of all the heirs ..." (who are not identified until the time of the decedent's death) and might not be available; (4) if the heirs "refused to sign they should not be in a position possibly to delay medical treatment to the party in need"; (5) decedents can bind their heirs through contracts and wills; (6) the Code of Civil Procedure (§§ 1283.1 & 1295)[4] evidences a legislative intent for arbitration of wrongful death actions arising from medical malpractice, and "[i]t would be illogical to construe these statutory provisions to apply only under the fortuitous circumstances that all potential heirs are also plan members"; (7) arbitration is neither "`an extraordinary procedure'" nor "`especially disadvantageous'" to the heirs; and (8) ample authority supports the "strong judicial and public policy favoring arbitration over litigation as a means of settling disputes in medical malpractice cases," including wrongful death actions. (Herbert, supra, 169 Cal.App.3d at pp. 724-727.)
The Herbert court attempted to make its case factually distinguishable from Rhodes, stating in a footnote the Rhodes court simply held "an agreement to arbitrate signed by a decedent with the defendant hospital did not bind a nonsigning party to the agreement. There was no provision in the agreement whereby the signing party intended to bind his or her heirs to the arbitration clause." (Herbert, supra, 169 Cal.App.3d at p. 725, fn. 2.)
The Herbert decision was rejected by the majority in the next appellate court to consider the issue nearly a decade later. The Second Appellate District, Division Four revisited the issue in Baker, supra, 202 Cal.App.3d 288. The patient in Baker signed an agreement to arbitrate "`any dispute as to medical malpractice . . .' [which] purported to bind [the patient] and *243 `anyone else who may have a right to assert a claim on [her] behalf . . .' as well as other persons for whom she had responsibility, such as her spouse and any children." (Id. at p. 290.) The patient and her husband brought claims against the doctor: The wife alleged negligence and the husband alleged loss of consortium. The court determined the agreement was inapplicable to the husband's claim for loss of consortium because the patient had "contracted for medical care solely on her own behalf, and the agreement to arbitrate related only to such services as would be provided to her under that contract." (Id. at p. 292.) The court concluded there was no language in the agreement which would support a finding it was signed on behalf of any person other than the wife. (Id. at p. 293.) As in Rhodes, the court in Baker reasoned that although public policy favors arbitration, "Arbitration assumes, however, an election by the parties involved to use it as an alternative to the judicial process. A party cannot be compelled to arbitrate a dispute it has not elected to submit. [Citation.]" (Id. at p. 291.)
The Baker court declined to follow the Herbert opinion for several reasons. It noted the case was distinguishable and legally at odds with its legal approach to the issue. It concluded, "Relying on principles expounded in the Doyle and Hawkins decisions, the Herbert court reasoned that the decedent had the implied authority to bind his wife and minor children to the arbitration clause contained in his group medical coverage based on their fiduciary relationship and his right and duty to provide for their medical care. [¶] . . . [¶] The court reasoned that the arbitration clause contained in the negotiated group health care plan was of the type approved by the Supreme Court in Madden . . ., supra, 17 Cal.3d 699, and that this was significant because both those plans, unlike individual contracts for medical services, were negotiated from a parity of bargaining power. . . . [¶] ... [¶] The case before us is distinguishable from Herbert for, by implication, Herbert acknowledges that an individual contract for medical services, as is involved here, should be more rigorously analyzed and less quickly applied to the claims of a nonsignatory. (See also Hawkins . . ., supra, 89 Cal.App.3d at p. 418 [distinguishing Rhodes on the basis that it involved an individual contract not a group health plan]; Dinong v. Superior Court [(1980)] 102 Cal.App.3d [845,] 852-853 [162 Cal.Rptr. 606] [noting greater statutory protection for those signing individual contracts for medical services].) [¶] We must expressly decline to follow Herbert, however, in that it, as appellant argues, would apparently attempt, even in this situation, to force respondent herein to arbitrate solely to avoid litigation of these claims in two different tribunals. [¶] We consider the respondent's exercise of his right to a jury trial paramount to the court's convenience in having all parties litigate in a single action." (Baker, supra, 202 Cal.App.3d at pp. 293-294.)
As noted above, the next case published a few months later, Gross, supra, 206 Cal.App.3d at pages 780-781, followed the Herbert case's approach to *244 the issue. It stated, "After carefully considering each of the foregoing decisions, we are persuaded the reasoning articulated in Herbert . . ., supra, 169 Cal.App.3d 718, more appropriately treats with the practical realities of the situation and more accurately reflects existing case law governing the applicability of arbitration agreements to nonsignatories. [¶] We, also, are unable to accede to the suggestion in Baker. . ., supra, 202 Cal.App.3d at page 294, that an individual contract for medical services `should be more rigorously analyzed and less quickly applied to the claims of a nonsignatory' than a negotiated group health plan. Heightened scrutiny, of course, is appropriate in the case of contracts of adhesion (Madden . . ., supra, 17 Cal.3d at p. 710, and cases cited therein), but when an arbitration agreement comports with the requirements of... section 1295, it is, by definition, `not a contract of adhesion, nor unconscionable nor otherwise improper . . . .' (§ 1295, subd. (e).)" (Gross, supra, 206 Cal.App.3d at pp. 780-781.)
Nearly a decade later, in 1996, the court in County of Contra Costa, supra, 47 Cal.App.4th 237, 245, considered the issue of binding nonsignatories to an arbitration agreement in a different context, however, the court's discussion of nonsignatories in medical malpractice arbitration is noteworthy. In County of Contra Costa, a pedestrian injured by a car sued the driver, the county, and the transit authority. She also raised a medical malpractice action against her treating health care provider, who moved to compel arbitration of the pedestrian's action as well as the indemnity cross-action brought against the provider by the other defendants. The trial court and appellate court agreed the arbitration agreement did not bind the cross-claimants, who had not signed the arbitration agreement and they had not agreed to be bound by its terms. The court discussed the limited circumstances in which nonsignators can be bound by an arbitration agreement. It concluded, "In essence, an action to compel arbitration is a suit in equity to compel specific performance of that contract. [Citation.] Absent a written agreementor a preexisting relationship or authority to contract for another that might substitute for an arbitration agreementcourts sitting in equity may not compel third party nonsignatories to arbitrate their disputes. [¶] We are aware that other appellate courts read the underlying contracts more broadly, finding that a medical malpractice arbitration clause applies to any claim arising out of the contracted-for services, regardless of whether they are asserted by the patient or a third party. (See Bolanos v. Khalatian, supra, 231 Cal.App.3d at p. 1591; Gross . . ., supra, 206 Cal.App.3d at p. 781 [loss of consortium].) However, these cases, in our view, ignore the constitutional and procedural rights of the nonsignatory third parties who had no prior connection to a signatory party to the arbitration agreement. (See Rhodes . . ., supra, 76 Cal.App.3d at pp. 609-610.)" (County of Contra Costa, supra, 47 Cal.App.4th at p. 245.)
In 2002, the Second District appellate court, Division Four again considered the issue, holding the decedent's physician-patient arbitration agreement *245 purporting to bind his heirs was not enforceable against the decedent's three adult daughters. (Buckner, supra, 98 Cal.App.4th at p. 141.) The court reasoned none of the exceptions to binding nonsignatories to an arbitration agreement applied: "Their father entered into the arbitration agreement solely for his own medical care. He was not their agent, they were not married to him, and they were not minors. He therefore lacked the authority to waive their right to a jury trial of their claims." (Id. at p. 143.)
The Buckner court determined the Herbert case was factually distinguishable: "In Herbert, the wrongful death claimants fell into three groups. For two of those groupsthe widow and minor childrenthe decedent's right to bind them to arbitration rested on well-grounded legal principles involving spouses and parents and children. For the third group, howeveradult children who did not belong to the health planthe decedent had no authority to act. The Herbert court nevertheless found that practical considerations involving the indivisibility of wrongful death claims permitted the arbitration agreement to sweep up the adult children. Herbert's rationale is inapplicable here because respondents are not dividing their wrongful death claims between different forums. Accordingly, Herbert does not apply." (Buckner, supra, 98 Cal.App.4th at p. 143.)
More recently two federal district courts have adopted the reasoning set forth in Herbert. (Drissi v. Kaiser Found. Hosps., Inc. (N.D.Cal. 2008) 543 F.Supp.2d 1076, 1081; Clay v. Permanente Med. Group, Inc. (N.D.Cal. 2007) 540 F.Supp.2d 1101, 1111.) Those courts distinguished Rhodes, Baker, and Buckner as not including decedent's spouse or the estate, so there was "no concern of splitting a wrongful death suit across forums or reaching inconsistent results." (Clay v. Permanente Med. Group, Inc., supra, 540 F.Supp.2d at p. 1111.)
(8) To briefly summarize, the line of cases starting with the Rhodes decision approached the issue by looking to the statutory language creating the wrongful death action. Recognizing such claims are not derivative actions, those courts have determined a patient's authority to bind others to his or her arbitration contract are limited by traditional contract principles and exceptions regarding the binding of nonsignators. It must be equitable to compel a nonsignatory to waive his or her right to a jury trial of his or her independent wrongful death action. The second line of authority, originating with the Herbert case, approaches the issue focusing on the goal of enforcing medical malpractice arbitration agreements, especially in wrongful death cases. These cases have essentially broadened the authority of one particular class of claimants (medical patients), to bind others to arbitration without the benefit of an agency or other preexisting relationship. Simply stated, the public policy supporting arbitration of medical malpractice disputes, *246 the Legislature's implicit approval of arbitration of wrongful death actions, and the concern patients will be denied treatment if they cannot bind all possible heirs to arbitration had been deemed to outweigh the constitutional and procedural rights of nonsignatory third parties.

H. Out-of-state Authority

Before deciding which line of reasoning we find more persuasive, it is worth noting other states have resolved the issue of whether nonsignatory adult heirs should be "swept up" into the deceased's arbitration agreement based on whether the wrongful death action is an independent or derivative cause of action. (See In re Labatt Food Service, L.P. (Tex. 2009) 279 S.W.3d 640 [under Texas law beneficiaries stand in decedent's legal shoes and are bound by his agreement]; Cleveland v. Mann (Miss. 2006) 942 So.2d 108, 118-119 [beneficiaries bound by decedent's arbitration agreement because under Mississippi wrongful death act, beneficiaries may bring suit only if decedent would have been entitled to bring action immediately before death]; Briarcliff Nursing Home, Inc. v. Turcotte (Ala. 2004) 894 So.2d 661, 665 [administrator of estate bringing wrongful death claim bound because administrator stands in legal shoes of decedent]; Ballard v. Southwest Detroit Hosp. (1982) 119 Mich.App. 814 [327 N.W.2d 370, 372] [administrator bringing wrongful death action bound by arbitration agreement because wrongful death is a derivative cause of action under Michigan law]; but see Bybee v. Abdulla (2008) 2008 UT 35 [189 P.3d 40, 43] [beneficiaries not bound because wrongful death is an independent cause of action under Utah law]; Finney v. Nat'l Healthcare Corp. (Mo.Ct.App. 2006) 193 S.W.3d 393, 395 [beneficiary not bound because under Missouri law the wrongful death act creates a new cause of action belonging to the beneficiaries].)
We also have reviewed one case from Colorado, which did not decide the issue based on the statutory language but rather resolved the issue on what the contracting parties intended. (Allen v. Pacheco (Colo. 2003) 71 P.3d 375, 379-380 [beneficiaries bound when contract reflects intent of the parties to bind beneficiaries].) This appears to be the approach also adopted in part by the cases in California following Herbert, supra, 169 Cal.App.3d 718 (beneficiaries bound when contract reflects intent of the parties to bind beneficiaries).

I. Our Analysis

(9) California law is clear that the cause of action created by the wrongful death statute is separate and distinct from the cause of action the deceased would have had for personal injuries had he survived. The heirs do not stand in the shoes of the party who signed the arbitration agreement. We *247 find the reasoning of the Rhodes line of cases and those of our sister jurisdictions employing a straightforward statutory analysis of the issue most persuasive. There is no compelling reason to create a new exception to bind nonsignatories to a contract. We find no contractual or statutory basis to confer on "medical patients" the special status of being able to waive the constitutional due process rights of family members (who are not third party beneficiaries or when there is no preexisting relationship).
(10) Rafael was not securing a medical plan for the Adult Children when he agreed to arbitration; they received no benefit from the contract. The contract was not created by a person having protective powers, such as those inherent with minors and employees. This is not a case involving a fiduciary, agency, or other preexisting relationship. Rafael entered into the arbitration agreement simply to obtain his own medical care. We find no legal or rational basis to make the wrongful death statute's "one action rule" a new exception to bind nonsignatories to an arbitration contract. This court will not endorse or propagate a rule permitting courts to "sweep up" nonsignatory parties into arbitration for the sake of judicial convenience as that would require us to ignore basic contract law principles (arbitration dependent on a consensual written contract), ignore the fundamental right to have a jury trial, and ignore constitutional rights to due process.
On a final note, we conclude equitable principles of invited error preclude us from disturbing the court's ruling with respect to Wife. "The `doctrine of invited error' is an `application of the estoppel principle': `Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.] ... At bottom, the doctrine rests on the purpose of the principle, which is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations.]" (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79].) "Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error. [Citations.]" (Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 212 [285 Cal.Rptr. 99, 814 P.2d 1341].) In plaintiffs' joint opposition to the petition to compel arbitration it was conceded Wife was bound by the arbitration agreement. She did not appeal from the ruling compelling her to arbitrate, and in the respondent's brief, the parties again concede Wife was bound to the arbitration agreement. Under these circumstances, we will not disturb the trial court's ruling.

*248 DISPOSITION
The order is affirmed. Respondents shall recover their costs on appeal.
Sills, P. J., and Rylaarsdam, J., concurred.
NOTES
[1] We refer to the Ruiz family by their first names for clarity and ease of reference, and intend no disrespect. (See In re Marriage of Olsen (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].)
[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.
[3] In his concurring opinion, then Associate Justice Ronald M. George indicated there was no reason to discuss or disapprove of the Herbert decision because it involved a different kind of arbitration provision and a different kind of lawsuit. He found "the majority's discussion of the Herbert case to be inappropriate and unnecessary to [the] decision." (Baker, supra, 202 Cal.App.3d at p. 295 (conc. opn. of George, J.).)
[4] Section 1283.1 provides "(a) All of the provisions of [s]ection 1283.05 [relating to the right of discovery in arbitration] shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to, every agreement to arbitrate any dispute, controversy, or issue arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another." (Italics added.)

Section 1295 provides for the arbitration of professional negligence claims including wrongful death and delineates strict requirements for a valid medical malpractice arbitration provision in an individual contract for medical services. Although these provisions were inapplicable to the Kaiser insurance plan at issue in Herbert the court found the language permitted arbitration of wrongful death and should be enforced. It concluded the language of "sections 1283.1 and 1295 evidence a legislative intent that a patient who signs an arbitration agreement may bind his heirs to that agreement, regardless of whether the heirs are also members of the plan." (Herbert, supra, 169 Cal.App.3d at p. 727.)