[No. B212603. Second Dist., Div. Seven. Aug. 25, 2009.]

RION ALICIA NEWTON RODRIGUEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent,
SANDY WITZLING et al., Real Parties in Interest.

COUNSEL

Rich Pfeiffer, Anton C. Gerschler and Dena M. Acosta for Petitioner.

No appearance for Respondent.

Prindle, Decker & Amaro, Jack R. Reinholtz, Douglas S. de Heras and Michael D. Valentine for Real Parties in Interest.

OPINION

JACKSON, J.—

## INTRODUCTION

Petitioner Rion Alicia Newton Rodriguez (Rodriguez) seeks writ relief from an order of the Superior Court of Los Angeles County granting the petition to arbitrate brought by real parties in interest Sandy Witzling, M.D., individually, and Sandy Witzling, M.D., Inc. (collectively Witzling), and staying the action as to them. We grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez is a minor born in August 1998 to her mother, Lee M. Newton (Newton). On October 17, 2006, four days prior to Newton's routine gallbladder surgery, she executed a physician-patient arbitration agreement (Arbitration Agreement) offered to her by real party in interest Sandy Witzling, M.D., in accordance with his custom and practice for all new patients.

The Arbitration Agreement included text as described in Code of Civil Procedure section 1295,[1] subdivisions (a), (b) and (c), applicable to agreements to arbitrate medical malpractice claims. The following provision appeared just above the signature line, in bold red type: "NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT." Article 1 stated that "any dispute as to medical malpractice . . . will be determined by submission to arbitration as provided by California law . . . . Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury . . . ." Article 2 of the Arbitration Agreement specified that it was the parties' intention that the agreement was binding on "all parties," including the patient's children, whose claims may arise out of or relate to the medical services to be provided. In article 5, the Arbitration Agreement provided that it could be "revoked by written notice delivered to the physician within 30 days of signature and if not revoked [the agreement would] govern all medical services received by the patient."[2]

On October 21, 2006, Newton died during the recovery period, allegedly from a nick in her liver that Dr. Witzling made during the surgery. Rodriguez is the sole heir to Newton's estate. Guardians ad litem were appointed for her in January 2007. By and through her guardians ad litem, in January 2008, she filed a complaint alleging, inter alia, "Medical Malpractice—Wrongful Death" against Witzling and others.[3] In July, Witzling filed a petition requesting an order that the controversy be decided by arbitration. Rodriguez opposed the petition based, in part, on her assertion that to permit a physician whose malpractice was the alleged cause of the patient's death to enforce an arbitration agreement for which the statutory "cooling off" period had not expired as of the time of the death would be inconsistent with the policy underlying section 1295 and against public policy requiring that waivers of the constitutional right to a jury trial be voluntary, knowing and intelligent. In

---

[1] All further section references are to the Code of Civil Procedure.

[2] Although the term "revoke" is used in the Arbitration Agreement, we read it as "rescind." In section 1295, subdivision (c), the right recognized is the right to rescind. Also, as pointed out in *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903], " 'Offers are "revoked." [Citation.] Contracts are extinguished by rescission.' "

[3] Rodriguez's complaint was against Witzling, Long Beach Memorial Medical Center, Memorial Health Services and National Healthcare Services. The complaint alleged "Medical Malpractice—Wrongful Death" against all defendants (first cause of action); "Negligence—Elam Claim" against the Long Beach Memorial Medical Center, Memorial Health Services and National Healthcare Services (second cause of action); "Res Ipsa Loquitur—Wrongful Death" against all defendants (third cause of action).

reply, Witzling claimed that Rodriguez's guardian had legal standing to revoke the Arbitration Agreement and, by failing to do so, the guardian waived the issue.

At the hearing on the motion on October 23, 2008, the trial court granted Witzling's petition and ordered a stay in proceedings as to Witzling only until arbitration was completed.[4] The court issued its written order on October 28, pursuant to which the court also retained jurisdiction to enforce the Arbitration Agreement and confirm the arbitration award.

## PETITION

Rodriguez asserts that, unless her petition is granted, she will be deprived of her constitutional right to a jury trial for the wrongful death of her mother. Rodriguez contends that the trial court's finding that she was bound by the Arbitration Agreement was erroneous because:

(1) The Arbitration Agreement was insufficient to deny her a jury trial, in that it failed to include a procedure for rescission if the patient died within the rescission period;

(2) Rodriguez has a constitutional right to a jury trial that was not knowingly, intelligently or voluntarily waived;

(3) Public policy cannot permit Witzling to benefit by limiting public access to his professional record as arbitration would permit, but a jury trial would allow such access;

(4) It was impossible for Rodriguez to act during the 30-day rescission period in order to preserve her right to a jury trial, in that she was a minor who was the subject of a custody dispute and no guardian had been appointed by the court within the 30-day rescission period.

Rodriguez requests that we either (a) issue a peremptory writ of mandate directing respondent superior court to vacate its orders of October 23, 2008, and to issue orders finding Rodriguez is entitled to a jury trial, or (b) issue an alternative writ directing the respondent superior court to show cause why it should not vacate its orders of October 23, 2008, and issue orders finding that Rodriguez is entitled to a jury trial.

---

[4] At the hearing, after announcing the order, the court added: "I would caution—I hesitate to use the word 'invite' anybody to seek review of the order. If you feel aggrieved, you certainly are—have your rights to do so . . . ."

## DISCUSSION

Rodriguez's contentions turn on the interpretation of the Arbitration Agreement and section 1295, and the relevant facts are undisputed. Therefore, we review the Arbitration Agreement de novo to determine whether it is legally enforceable against Rodriguez. (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 241 [54 Cal.Rptr.2d 628]; see also *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 [116 Cal.Rptr.2d 671].)

■ An individual is granted a right to a jury trial by the California Constitution, article I, section 16 as follows: "Trial by jury is an inviolate right and shall be secured to all . . . . In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." A waiver of the right to a jury trial must be knowing and voluntary. (Cal. Const., art. I, § 16; cf. *People v. Smith* (2003) 110 Cal.App.4th 492, 500 [1 Cal.Rptr.3d 779].) "[T]he right to trial by jury is considered so fundamental that ambiguity in [a] statute permitting such waivers must be 'resolved in favor of according to a litigant a jury trial.' " (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956 [32 Cal.Rptr.3d 5, 116 P.3d 479], quoting *Loranger v. Nadeau* (1932) 215 Cal. 362, 368 [10 P.2d 63], overruled on other grounds in *Reich v. Purcell* (1967) 67 Cal.2d 551, 555 [63 Cal.Rptr. 31, 432 P.2d 727].)

■ California has a strong public policy, however, favoring arbitration over a jury trial or other litigation, in that arbitration is a speedy and relatively inexpensive means of resolving disputes and eases court congestion. (*Pietrelli v. Peacock* (1993) 13 Cal.App.4th 943, 946 [16 Cal.Rptr.2d 688].) As part of the Medical Injury Compensation Reform Act, the Legislature enacted section 1295, the purpose of which is "to encourage and facilitate arbitration of medical malpractice disputes." (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 578 [53 Cal.Rptr.3d 887, 150 P.3d 764].)

Section 1295 provides a procedure for a patient and a health care provider to enter into an agreement to waive their rights to a jury trial and resolve medical malpractice claims by arbitration.[5] Subdivision (e) of section 1295 states that such an agreement is not a contract of adhesion if the agreement complies with subdivisions (a), (b) and (c).[6] (See *Horwich v. Superior Court*

---

[5] Further references to any arbitration agreement are to an agreement to arbitrate medical malpractice claims subject to section 1295.

[6] Section 1295 provides in pertinent part: "(a) Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized

(1999) 21 Cal.4th 272, 284 [87 Cal.Rptr.2d 222, 980 P.2d 927]; *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1590 [283 Cal.Rptr. 209].) The parties agree that the text of the Arbitration Agreement complied with the three subdivisions.

■ There is, however, no conclusive presumption that a person who signs a document containing text complying with the section 1295 requirements has in fact consented to arbitration as required to form an enforceable agreement. (*Ramirez v. Superior Court* (1980) 103 Cal.App.3d 746, 756 [163 Cal.Rptr. 223].) " 'The right to arbitration depends on a contract.' " (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra*, 47 Cal.App.4th at p. 245; see *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) As for any contract to be valid, an arbitration agreement requires the mutual consent of the parties. (Cf. *Lazarus v. Titmus* (1998) 64 Cal.App.4th 1242, 1247–1249 [75 Cal.Rptr.2d 676].) No enforceable agreement "exists unless the parties signing the document act voluntarily and are aware of the nature of the document and have turned their attention to its provisions or reasonably should have turned their attention to its provisions." (*Ramirez, supra*, at p. 756, fn. 3.) In order to allow a patient sufficient time to rescind the agreement or, by his or her silence, confirm that his or her waiver is knowing and voluntary, section 1295, subdivision (c), requires that the patient be given a 30-day "cooling off" period after signing the agreement. During that time, the patient may rescind the agreement by giving written notice of rescission.

In this appeal, the parties focus primarily on the question of whether the document signed by Newton is binding on her minor daughter, Rodriguez. In our view, however, the threshold issue is raised by Rodriguez's contention that no valid waiver of the right to a jury trial was made. Without a valid

---

or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' [¶] (b) Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type: [¶] 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.' [¶] (c) Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor. [¶] . . . [¶] (e) Such a contract is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b), and (c) of this section."

waiver, no enforceable arbitration agreement would exist. (*Ramirez v. Superior Court, supra,* 103 Cal.App.3d at pp. 756–757 & fn. 3.)

■ " '[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.' " (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761 [50 Cal.Rptr.3d 700], quoting *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 413.) As the party seeking to compel arbitration, Witzling had the burden of proving the existence of an enforceable arbitration agreement. (§ 1281.2; *Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 972; *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 [55 Cal.Rptr.3d 823].) Where, as here, the relevant facts are undisputed, on appeal, we independently determine whether such an agreement exists. (*Flores, supra,* at p. 586.)

Even if, arguably, Newton had the authority, as a parent, to waive her child's constitutional rights to a jury trial, such waiver would be ineffective if not knowingly and voluntarily made. The earmarks that Newton may not have knowingly and voluntarily waived even her own rights, not to mention her daughter's rights, are present. She was presented with the Arbitration Agreement only four days before her scheduled surgery under circumstances in which she could have believed she must sign the agreement in order to have Witzling perform the surgery. There is no evidence that she would or would not have reread and reconsidered the Arbitration Agreement after her surgery or that she would or would not have exercised her right to "revoke" the agreement within the statutory 30-day revocation period. (Cf. *Ramirez v. Superior Court, supra,* 103 Cal.App.3d at pp. 756–757.) Newton signed the Arbitration Agreement herself, not through someone authorized to do so on her behalf, and, hence, the determinative factor is Newton's intent, not the intent of some representative appointed after her death. (*Gross v. Recabaren* (1988) 206 Cal.App.3d 771, 777 [253 Cal.Rptr. 820].) Newton's death shortly after the surgery rendered it impossible to make any evidentiary finding regarding whether Newton's alleged waiver of her rights, not to mention the child's rights, to a jury trial was knowing and voluntary. Newton's death prior to the expiration of the 30-day "cooling off" period also made it impossible for full compliance with section 1295 requirements. A statutory prerequisite to an enforceable arbitration agreement under section 1295 is that the person signing the agreement must have 30 days to review the agreement and reconsider whether he or she knowingly and voluntarily intends to waive the right to a jury trial or, alternatively, desires to rescind the agreement. (§ 1295, subd. (c).) Thus, Newton's death prior to the expiration of the 30-day period rendered it impossible to establish that an arbitration agreement exists that is enforceable under section 1295. Given the foregoing facts, we

conclude that Witzling would be unable to carry his burden of proving that an agreement exists. (*Flores v. Evergreen at San Diego, LLC, supra,* 148 Cal.App.4th at p. 586.)

■ When weighing the competing interests of an individual's constitutional right to a jury trial against the Legislative preference for arbitration of medical malpractice claims codified in section 1295, in the absence of proof of the individual's knowing and voluntary waiver of such rights, the individual's constitutional rights must prevail. It has been recognized that " ' "[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." ' " (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701 [74 Cal.Rptr.3d 210].) No section 1295 agreement exists unless each party signing the document consents, that is, acts voluntarily, is aware of the nature of the document, has turned his or her attention to its provisions, or reasonably should have turned his or her attention to its provisions. (*Ramirez v. Superior Court, supra,* 103 Cal.App.3d at p. 756, fn. 3.) Section 1295 provided that Newton had to be given 30 days as a reasonable time in which she could have turned her attention to the provisions of the Arbitration Agreement before her right to a jury trial was definitively waived. Newton died just a few days after the 30-day period began to run. As the California Supreme Court has observed, "the right to trial by jury is so important that it must be 'zealously guarded' in the face of a claimed waiver . . . ." (*Grafton Partners v. Superior Court, supra,* 36 Cal.4th at p. 956.) Statutes allowing such a waiver must be interpreted "as providing strict and exclusive requirements for waiver of jury trial." (*Ibid.*) Courts are to resolve doubts in interpreting the waiver provisions of such a statute in favor of a party's right to a jury trial. (*Ibid.*) Section 1295's provision for a 30-day period in which a party could rescind the agreement should be interpreted as a strict and exclusive prerequisite for waiver of a jury trial.

Witzling urges an interpretation of section 1295 as creating an enforceable waiver simply by the passage of 30 days, regardless of whether the party was alive and able throughout the 30-day period to exercise the party's right of rescission. Such interpretation, however, goes against the principle that the statute's requirements for waiver be interpreted as strict and exclusive. (*Grafton Partners v. Superior Court, supra,* 36 Cal.4th at p. 956.) Witzling does not cite any judicial opinion supporting his interpretation. Therefore, we must resolve any doubts as to the validity of Newton's waiver of the right to a jury trial in favor of that right. (*Ibid.*)

Witzling advances arguments to the effect that the 30-day period was tolled either until the court's appointment of Rodriguez's legal guardian or the date of Witzling's service on the guardian of written notice of intent to enforce the Arbitration Agreement. Another possibility was raised in oral argument that,

arguably, the 30-day period was tolled until Rodriguez gave notice under section 364 of the intent to sue Witzling for professional negligence.

■ Section 1295 makes no provision for tolling the period on any basis in the event the patient who signed the agreement dies before the 30-day period has run. Only one provision in section 1295 addresses such an eventuality in any manner, and it deals solely with who has authority to rescind on behalf of the patient. Subdivision (c) grants authority to rescind to the patient's legal guardian or conservator should the patient become incapacitated or if the patient is a minor. (§ 1295, subd. (c).) There is no provision authorizing the legal guardian of a minor who is *not* the patient to rescind.

■ Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period "to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 [2 Cal.Rptr.3d 655, 73 P.3d 517]; accord, *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99–100 [84 Cal.Rptr.3d 734, 194 P.3d 1026].) The Legislature may preclude equitable tolling by including appropriate provisions in the statute. (*Lantzy, supra,* at p. 371.) No such provisions appear in section 1295. Thus, for example, an argument could be made that the 30-day period for rescission should be equitably tolled until the appointment of a legal guardian for a patient. (See § 1295, subd. (c); *McDonald, supra,* at p. 107.)

Equitable tolling should not be applied, however, where to do so is inconsistent with the statute at issue. (*Lantzy v. Centex Homes, supra,* 31 Cal.4th at p. 371.) As we previously noted, section 1295 expressly provides only for contingencies for *the patient* and only if *the patient* becomes incapacitated or is a minor. The issue presented in the instant case, however, is not authority to rescind on behalf of *the patient*. The right at issue is a constitutional right held by Rodriguez. Accordingly, we conclude that, given the facts in the instant case, reaching beyond the express language of the statute cannot be reconciled with applying the equitable tolling doctrine to the appointment of Rodriguez's legal guardian or any action by her guardian.

Had the circumstances been slightly different, we believe that equitable tolling could have been applied. As we read section 1295, it does not provide the arbitration provision is necessarily unenforceable in this factual situation (indeed, it does not appear to contemplate this scenario). California case law establishes the right of a parent to bind a minor child to an arbitration agreement, under some circumstances, when it is the parent, not the child, who is the patient, even though the effect of such an agreement is ultimately to require arbitration of the child's wrongful death action. (See *Ruiz v. Podolsky* (2009) 175 Cal.App.4th 227, 241–246 [95 Cal.Rptr.3d 828]; *County*

*of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.4th at pp. 242–243.)

Section 1295, subdivision (e), insulates an arbitration agreement against a challenge that it is unconscionable or otherwise improper if it has an effective 30-day rescission provision. It does not, however, automatically invalidate an agreement that does not permit rescission. The only circumstances for which the statute expressly grants rescission authority to someone other than the patient are when the patient is incapacitated or the patient is a minor. (§ 1295, subd. (c).) Nothing in the statute, however, limits the situations in which others may be granted rescission authority to those two circumstances.

Our reading of section 1295 leaves the door open for enforceability of a physician-patient arbitration agreement which expressly provides a procedure for rescission on behalf of a nonpatient minor child covered by the agreement, in the event the patient dies within the rescission period. For example, if the agreement expressly states a guardian appointed for a minor child following the death of the child's parent may exercise the right to rescind set forth in section 1295, subdivision (c), and otherwise satisfies the section's requirements, then we believe the arbitration agreement would be enforceable in the event the guardian did not timely exercise the right to rescind. In determining whether an attempted rescission was timely—an issue not before us in the case at bar where there was no notice to the guardian of any right to rescind—a court could apply the equitable tolling doctrine to extend the time for the guardian to act to exclude any period before the guardian was appointed, as well as any additional time between appointment and the time the guardian knew (or reasonably should have known) of the arbitration agreement. (Cf. *McDonald v. Antelope Valley Community College Dist., supra,* 45 Cal.4th at pp. 99–100 [equitable tolling "is a judicially created, nonstatutory doctrine" designed " 'to ensure fundamental practicality and fairness' "; it is "a creature of the judiciary's inherent power ' "to formulate rules of procedure where justice demands it" ' "].) As suggested at oral argument in this case, that excluded period of time in most cases should end no later than the date the section 364 notice of intent to sue is served.

■    Under the facts in the case before us, however, we conclude that the document purporting to be Newton's agreement to arbitrate is not enforceable.    ■    When no enforceable agreement exists, no order compelling arbitration can be issued. (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.4th at p. 245; see also § 1281.2; *Hotels Nevada v. L.A. Pacific Center, Inc., supra,* 144 Cal.App.4th at p. 761 [" 'the existence of the agreement is a statutory prerequisite to granting the petition' " to arbitrate].) Having reached this conclusion, we need not address the other arguments raised by the parties.

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its order of October 23, 2008, compelling arbitration, and to issue an order that the matter be tried before a jury. Rodriguez shall recover her costs of this proceeding.

Perluss, P. J., and Zelon, J., concurred.