*901 J. HUFFMAN, dissenting.
Marlene Baker LaBerge, a 73-year-old woman, who needed 24-hour care, signed two arbitration agreements seven days after she was admitted to a nursing facility owned by Italian Maple Holdings, LLC dba La Paloma Healthcare Center (La Paloma). She died 10 days later allegedly because of the misconduct of La Paloma agents. Her heirs, Paul LaBerge, Suzanne Markx, and Talmadge Baker (collectively Plaintiffs), filed suit against La Paloma and Plum Healthcare, LLC (together Defendants). In response, Defendants submitted a petition to compel arbitration. Following *1169 Rodriguez v. Superior Court (2009) 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728 ( Rodriguez ), the superior court denied the motion.
The majority reverses the court's order, determining that Rodriquez was wrongly decided. In doing so, the majority focuses solely on the text of Code of Civil Procedure [9] section 1295, subdivision (c). Although I do not quibble with the majority's interpretation of that subdivision, I conclude that the statute must be considered in the context of determining whether LaBerge waived her constitutional right to a jury trial. This is especially important when addressing a consumer protection statute like section 1295. Under the facts of this case, I would follow Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728, and find that Defendants did not show LaBerge knowingly and voluntarily waived her constitutional right to a jury trial. (See id . at pp. 1469-1470, 98 Cal.Rptr.3d 728.) Accordingly, I dissent.
The majority correctly notes that a party petitioning to compel arbitration must first offer evidence of a written agreement to arbitrate the subject dispute. (See Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) Here, Defendants offered copies of two arbitration agreements LaBerge purportedly signed. The majority points out that Plaintiffs did not dispute that Defendants and LaBerge signed the two arbitration agreements. However, one wonders how Plaintiffs could do so. They were not present when LaBerge signed the agreements, and LaBerge passed away shortly after executing the agreements. Indeed, there is no indication in the record that Plaintiffs were aware of the arbitration agreements until after they filed the instant action.
Defendants offered no details regarding LaBerge's execution of the two arbitration agreements. Defendants did not explain why LaBerge was not asked to sign the arbitration agreements with the other admission paperwork she executed and/or received before her admission to the nursing facility. The record does not indicate under what circumstances LaBerge signed the agreements or how the agreements were presented to her seven days after she was admitted to La Paloma's nursing facility. Indeed, Defendants' trial attorney authenticated the two arbitration agreements. Because Plaintiffs did not object to this method of authentication, we do not know what personal knowledge Defendants' trial attorney possessed that allowed him to authenticate the agreements. In his declaration, the attorney does not state that he was present when LaBerge executed the agreements or he is otherwise familiar with her signature. Thus, we are left with a 73-year-old woman in need of 24-hour care, signing two agreements, under unknown circumstances, *1170 purportedly waiving her constitutional right to a jury trial, seven days after she was admitted to La *902 Paloma's nursing facility.[10]
The majority glosses over this background, emphasizing that Plaintiffs did not argue LaBerge lacked the capacity to execute the agreements or contend the agreements are the result of fraud, duress, or undue influence.[11] Observing these omissions, the majority then correctly states that Plaintiffs' main argument is that the instant petition to compel arbitration must fail under Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728. Because the majority holds that the appellate court misinterpreted section 1295, subdivision (c) in Rodriguez , it concludes the superior court erred in following Rodriguez below. Put differently, the majority determines that section 1295, subdivision (c) makes the subject arbitration agreements immediately enforceable, unless or until, LaBerge rescinded them. Because LaBerge did not rescind them before her death, it does not matter that she still had 20 days in which to rescind them at the time she died. Nor does it matter that we know not the circumstances under which she signed the agreements. Under the majority's interpretation, per section 1295, subdivision (c), it is enough that Defendants produce the signed arbitration agreements. I believe such a strict rule does not properly consider the importance of a party waiving his or her constitutional right to a jury trial and that such a waiver must be knowingly and voluntarily made. Nor does the rule articulated by the majority sufficiently consider, in my opinion, the context in which LaBerge signed the arbitration agreements. Instead, I think the appellate court in Rodriguez correctly balanced the competing interests of an individual's constitutional right to a jury trial against the preference for arbitration of medical malpractice claims codified in section 1295. I would follow Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728 here.
As part of the Medical Injury Compensation Reform Act, the Legislature enacted section 1295"to encourage and facilitate arbitration of medical malpractice claims." ( Reigelsperger v. Siller (2007) 40 Cal.4th 574, 578, 53 Cal.Rptr.3d 887, 150 P.3d 764.) Thus, as the appellate court noted in Rodriguez , "[s]ection 1295 provides a procedure for a patient and a health care provider to enter into an agreement to waive their rights to a jury trial and resolve medical malpractice claims by arbitration." ( Rodriguez, supra, 176 Cal.App.4th at p. 1467, 98 Cal.Rptr.3d 728.)
*1171 The court in Rodriguez considered waiver in the context of section 1295, subdivision (c).[12] Specifically, the court discussed the importance of determining whether a party has in fact consented to arbitrate *903 disputes and waived its right to a jury trial:
"There is, however, no conclusive presumption that a person who signs a document containing text complying with section 1295 requirements has in fact consented to arbitration as required to form an enforceable agreement. [Citation.] ... As for any contract to be valid, an arbitration agreement requires mutual consent of the parties. [Citation.] No enforceable agreement 'exists unless the parties signing the document act voluntarily and are aware of the nature of the document and have turned their attention to its provisions.' [Citation.] In order to allow a patient sufficient time to rescind the agreement or, by his or her silence, confirm that his or her waiver is knowing and voluntary, section 1295, subdivision (c) requires that the patient be given a 30-day 'cooling off' period after signing the agreement. During that time, the patient may rescind the agreement by giving written notice of rescission." ( Rodriguez , supra , 176 Cal.App.4th at p. 1468, 98 Cal.Rptr.3d 728.)
As relevant here, the appellate court interpreted subdivision (c) as including a specific, statutory protection for a patient signing an arbitration agreement: "A statutory prerequisite to an enforceable arbitration agreement under section 1295 is that the person signing the agreement must have 30 days to review the agreement and reconsider whether he or she knowingly and voluntarily intends to waive the right to a jury trial or, alternatively, desires to rescind the agreement." ( Rodriguez , supra , 176 Cal.App.4th at p. 1469, 98 Cal.Rptr.3d 728.) In interpreting section 1295, subdivision (c), the appellate court determined that it could not find the decedent waived her right to a jury trial (or her child's right to same) because the decedent died before the expiration of the 30-day cooling off period. In this sense, the appellate court suggested the arbitration agreement could not be enforceable until the expiration of the 30-day period in which a signatory could rescind the agreement, unless it could be shown that the signatory would not have rescinded it. In interpreting section 1295, subdivision (c) in this manner, the court explicitly rejected the defendant doctor's proposed interpretation that subdivision (c) created an enforceable waiver simply by the passage of 30 days, regardless of whether the party was alive and able throughout the 30-day cooling off period to exercise the party's right of rescission. The court commented that such an interpretation would violate "the principle that the *1172 statute's requirements for waiver be interpreted as strict and exclusive." ( Rodriguez , supra , 176 Cal.App.4th at p. 1470, 98 Cal.Rptr.3d 728.)
However, the majority does not read section 1295, subdivision (c) the same way as the appellate court in Rodriguez, supra, 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728. Here, the majority emphasizes that the subject arbitration agreements exhibit the parties' intention that the agreements become enforceable immediately upon execution and the fact LaBerge died before the expiration of the 30-day rescission period does not negate this intention. Again, I am concerned that the majority's approach does not sufficiently consider the circumstances of the execution of the subject agreements, the details of which are largely unknown in the instant matter.
The majority takes issue with the appellate court's interpretation of section 1295, subdivision (c) in Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728, specifically that court's contention that the subdivision creates a statutory condition precedent to the enforceability of an arbitration agreement in the context of a medical malpractice claim. The majority faults *904 the appellate court with conflating the question whether a contract for the statute that grants a 30-day rescission right is immediately enforceable with the question whether such an agreement was entered into knowingly and voluntarily. (See id. at p. 1469, 98 Cal.Rptr.3d 728.) The majority therefore holds that the statute's allowance of a party to reconsider his or her decision does not suggest that a party cannot be determined to have knowingly and voluntarily considered the decision in the first place. The majority's analysis, however, begs the question, did Defendants prove LaBerge knowingly and voluntarily waive her constitutional right to a jury trial under the facts of this case. Because Defendants had the burden below and there is no evidence whatsoever in the record regarding the circumstances of LaBerge's execution of the agreements, I would answer this question in the negative, under the specific facts of this case.
Here, a 73-year-old woman in need of 24-hour care was asked to sign two arbitration agreements seven days after she was admitted to La Paloma's nursing facility. She died 10 days later, allegedly because La Paloma's staff abandoned her and purposefully withheld care. In petitioning to compel arbitration, Defendants did not offer any evidence regarding the circumstances of LaBerge's execution of the subject arbitration agreements. Alternatively stated, but for the signed arbitration agreements that LaBerge could have rescinded at the time of her death, Defendants did not provide any evidence that LaBerge knowingly and voluntarily waived her constitutional right to a jury trial. Accordingly, I cannot say that Defendants carried their burden in their petition to compel arbitration. Such a determination is made even more difficult because LaBerge still had 20 days in which to rescind her consent to the arbitration agreements at the time of her death. And, according *1173 to Plaintiffs, it is Defendants' conduct that deprived LaBerge of those additional 20 days. As such, under these circumstances, I would follow Rodriguez and determine that the subject arbitration agreements are not enforceable. (See Rodriguez , supra , 176 Cal.App.4th at p. 1472, 98 Cal.Rptr.3d 728.) I therefore dissent.

Statutory references are to the Code of Civil Procedure unless otherwise specified.

Defendants also submitted four exhibits consisting of various medical evaluations of LaBerge. Defendants maintained that these documents proved LaBerge was competent to execute the arbitration agreements. We observe that none of these documents describe the circumstances of LaBerge's execution of the arbitration agreements. Further, Defendants' trial counsel authenticated these documents with no indication that he had sufficient personal knowledge to do so or otherwise explain their contents.

Although we agree these issues were not raised, we question how Plaintiffs could have properly raised these issues when they were not present during the execution of the arbitration agreements and have no knowledge regarding the circumstances of their execution.

Section 1295, subdivision (c) provides: "Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor."