Filed 8/28/24  Perez v. It Works Marketing CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MARITES PEREZ,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IT WORKS MARKETING, INC.,<br><br>    Defendant and Appellant. | A168331<br><br>(Alameda County<br>Super. Ct. No. RG21113277) |

This is an appeal from an order denying the motion of defendant It Works Marketing, Inc. (It Works), to compel plaintiff Marites Perez to arbitrate her individual claims under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1]  The trial court denied It Works's motion after finding the parties' arbitration agreement contained no clear and unmistakable delegation of authority to the arbitrator to decide arbitrability issues and was permeated with procedural and substantive unconscionability.

On appeal, It Works contends (1) the trial court's findings were erroneous as a matter of law and (2) to the extent a few provisions of the arbitration agreement were unenforceable, the trial court abused its

---

[1] Unless otherwise stated, all statutory citations herein are to the Labor Code.

discretion by declining to sever them. It Works thus seeks reversal of the order denying its motion to compel and a remand of the matter to the trial court with instructions to enter an order compelling arbitration of plaintiff's individual PAGA claims and staying her nonindividual PAGA claims pending the arbitration's outcome. We decline these requests since we agree with the trial court this arbitration agreement is not enforceable. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

It Works is a direct sales company that markets its products and services through independent distributors. On August 3, 2020, plaintiff, while employed as a registered nurse case manager, signed up on It Works's Web site to also work as an It Works distributor. To do so, plaintiff clicked on the " 'Become a Distributor' " link on the Web site, purchased a " 'Starter Kit,' " and entered her personal information. Further, plaintiff reviewed and agreed to the terms of the " 'It Works! Distributor Agreement Terms & Conditions" (Distributor Agreement) by checking a box that stated: " 'By checking this box, I electronically acknowledge that I understand and agree to the It Works! Distributor Agreement. I realize this is a valid and binding contract.' " The full Distributor Agreement was only made available to plaintiff in electronic format on the Web site, accessed through an embedded hyperlink labeled " 'View Distributor Agreement.' "

## I. *The Arbitration Agreement.*

The Distributor Agreement itself contains no arbitration agreement. However, the Distributor Agreement incorporates a 37-page document entitled "Policies and Procedures" that is hyperlinked within the Distributor Agreement. The arbitration agreement is found on page 24 of the Policies and Procedures document and provides, "Except as otherwise provided in the

2

Agreement, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled through confidential arbitration" (hereinafter, Arbitration Agreement). The Arbitration Agreement also provides that the arbitration will be conducted by the American Arbitration Association (AAA) "in accordance with the AAA's Commercial Arbitration Rules and Mediation Procedures" (hereinafter, AAA Rules and Procedures).

The AAA Rules and Procedures are not attached to the Arbitration Agreement. Instead, the Arbitration Agreement includes an embedded link to the AAA Web site home page and leaves it to the reader to navigate the Web site to find the particular page with the AAA Rules and Procedures.[2]

## II. *Plaintiff's Complaint.*

On September 20, 2021, plaintiff filed a representative action complaint in Alameda County Superior Court under PAGA on behalf of herself and all other aggrieved It Works employees in California. This complaint alleged It Works had engaged in a systematic pattern of wage and hour violations under the Labor Code by, among other things, (1) misclassifying employees as independent contractors (Lab. Code, § 226.8); (2) failing to pay minimum wages for all hours worked; (3) failing to pay overtime wages for all hours worked; (4) failing to timely pay all earned wages; (5) failing to pay all wages due upon separation of employment (*id.*, §§ 201–204, 210, 510, 1194, 1194.2, 1197, 1198); (6) failing to provide lawful meal periods or compensation in lieu thereof (*id.*, §§ 226.7, 512); (7) failing to authorize or permit lawful rest breaks or provide compensation in lieu thereof (*id.*, § 226.7); (8) failing to provide sick pay (*id.*, § 246); (9) unlawfully deducting wages (*id.*, § 221);

---

[2] Other relevant provisions of the Arbitration Agreement are discussed *post*, in the discussion section of this opinion.

(10) failing to provide accurate itemized wage statements (*id.*, § 226);

(11) failing to reimburse all business expenses (*id.*, §§ 2800, 2802); and

(12) failing to provide workers' compensation insurance (*id.*, § 3700). For these violations, plaintiff sought on behalf of herself and other aggrieved employees monetary relief, penalties, and attorney's fees, costs and expenses pursuant to Labor Code section 2699, subdivision (g) and Code of Civil Procedure section 1021.5.

On November 5, 2021, It Works filed an answer to plaintiff's complaint, denying all claims and raising various affirmative defenses, including that plaintiff was not an It Works employee.

On August 19, 2022, It Works filed a first amended answer adding as an affirmative defense the following: "Plaintiff's sole claim in this action is a representative action claim seeking civil penalties under [PAGA] on behalf of herself and putative representative group members. In light of the United States Supreme Court's holding in *Viking River v. Moriana,* 142 S.Ct. 1906 (2022), Plaintiff's claims (and the claims of putative representative group members) are barred, in whole or in part, because Plaintiff signed an enforceable arbitration agreement that requires her to pursue all claims related to her status as an independent contractor Distributor for Defendant individually in arbitration."

III.  ***It Works's Motion to Compel Arbitration, the Trial Court's Denial of the Motion, and This Appeal.***

On November 18, 2022, It Works filed a motion to compel arbitration of plaintiff's claims pursuant to the Federal Arbitration Act (9 U.S.C. § 1 et seq.). In its point and authorities, It Works argued that plaintiff voluntarily agreed to binding individual arbitration as the exclusive means of resolving all claims she may have against It Works and that the Arbitration

4

Agreement contains an enforceable delegation clause delegating questions of arbitrability to an arbitrator.

On June 1, 2023, plaintiff filed an opposition to It Works's motion, arguing the Arbitration Agreement failed to clearly and unmistakably delegate the issue of enforceability to an arbitrator and is unenforceable due to its procedural and substantive unconscionability.

On June 14, 2023, the trial court held a contested hearing on It Works's motion to compel. After taking the matter under submission, the court denied the motion, finding that the parties did not delegate questions of arbitrability to an arbitrator and that the Arbitration Agreement was procedurally and substantively unconscionable. The court also declined to sever the numerous unconscionable terms and instead deemed the Arbitration Agreement as a whole unenforceable. This timely appeal followed.

**DISCUSSION**

It Works contends the trial court erred in (1) finding that the Arbitration Agreement failed to clearly and unmistakably delegate issues of arbitrability to the arbitrator, (2) finding that the Arbitration Agreement was procedurally and substantively unconscionable, and (3) refusing to sever any unconscionable provisions while enforcing the remainder of the Agreement. We address these issues in turn.

I. *Legal Framework.*

Both California and federal law have a strong policy favoring arbitration as the means to resolve disputes. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 96–97 (*Armendariz*); see 9 U.S.C. § 2 [arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

5

revocation of any contract"].)  "There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate."  (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.)

The party seeking arbitration bears the burden of proving the existence of an enforceable arbitration agreement that applies to the underlying dispute, while the party opposing arbitration bears the burden to prove any defense, such as unconscionability.  (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 77.)

On appeal, when no conflicting extrinsic evidence is introduced to aid the interpretation of an arbitration agreement, we review a court's ruling on a petition to compel arbitration de novo.  (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)  However, we review the trial court's decision to sever or not to sever unconscionable provisions for abuse of discretion.  (*Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 313 (*Beco*).)

## II.    *Delegation of Authority to Decide Arbitrability.*

It Works contends as a threshold matter the arbitrability of plaintiff's claims should have been decided by an arbitrator and not the court.  The governing law is not in dispute.

"Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability."  (*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209 (*Dennison*).)  "This is a ' "heightened standard" ' that ' "pertains to the parties' manifestation of intent, not the agreement's validity." ' [Citations.]  That is because the

6

question of who would decide gateway questions like the unconscionability of an arbitration provision 'is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter.' [Citations.] 'Although parties are free to authorize arbitrators to resolve such questions, [courts] will not conclude that they have done so based on "silence or ambiguity" in their agreement, because "doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." ' " (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 772.)

Here, the Arbitration Agreement does not contain a clear and unmistakable delegation clause. Instead, the Arbitration Agreement, provided to plaintiff only via a hyperlink in the Distributor Agreement, merely states, "The arbitration shall be filed with, and administered by, the American Arbitration Association in accordance with the AAA's Commercial Arbitration Rules . . . ." Neither the Distributor Agreement nor the hyperlinked Arbitration Agreement includes or attaches the AAA Rules and Procedures. While the Arbitration Agreement does contain a uniform resource locator (URL) link to the AAA Web site's home page, the AAA Rules and Procedures are not located on this home page. Rather, to obtain a copy of these rules, the Arbitration Agreement instructs a distributor to submit a request by email "to It Works! Customer Service Department."

We agree with the trial court this "multi-level nesting of the AAA rule in question" does not meet the heightened standard that applies under California law. Under this standard, an arbitration agreement must do more than simply refer an unsophisticated party to the AAA Rules and Procedures in order to provide "clear and unmistakable" evidence of the parties' intent to delegate arbitrability to an arbitrator. (E.g., *Ajamian v. CantorCO2e, L.P.*

7

(2012) 203 Cal.App.4th 771, 782 (*Ajamian*); *Beco, supra*, 86 Cal.App.5th at pp. 305–306 ["we reject the contention that the arbitration agreement, with or without the AAA rules incorporated, evidenced a 'clear and unmistakable' intent to delegate the validity of the agreement to the arbitrator"]; *Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1052 (*Gostev*) ["incorporation by reference of AAA Commercial Arbitration Rules does not provide clear and unmistakable evidence the parties intended to delegate to the arbitrator the question of unconscionability"].)

It Works tries to distinguish *Beco*, *Gostev* and *Ajamian* on the grounds that, unlike their agreements, the Arbitration Agreement contains a URL link to the AAA home page and an offer to provide plaintiff and other distributors with the AAA Rules and Procedures upon request. We are not persuaded.

As *Ajamian* explains: "In our view, while the incorporation of AAA rules into an agreement might be sufficient indication of the parties' intent in other contexts, we seriously question how it provides *clear* and *unmistakable* evidence that an employer and an employee intended to submit the issue of the unconscionability of the arbitration provision to the arbitrator, as opposed to the court. There are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability." (*Ajamian, supra*, 203 Cal.App.4th at p. 790.) *Beco, supra*, adopted this reasoning. (86 Cal.App.5th at p. 305.) As do we. The mere fact that It Works drafted the Arbitration Agreement to incorporate by reference the AAA Rules and Procedures, to provide a URL link to the AAA Web site home page, and to offer the means to obtain a copy of the AAA Rules and Procedures does not reflect the parties' *clear and unmistakable* intent to

8

delegate issues of arbitrability to an arbitrator rather than the court. (*Mondragon v. Sunrun, Inc.* (2024) 101 Cal.App.5th 592, 605–607 & fn. 4 (*Mondragon*) [arbitration agreement that incorporated the AAA rules, provided the URL of the AAA Web site home page and stated the company would provide a copy of the rules on request, did not clearly and unmistakably delegate arbitrability decisions to the arbitrator].) Given the absence of any reference whatsoever to issues of arbitrability, there is no basis for this court to find evidence in the Arbitration Agreement of a clear and unmistakable intent to have any particular person or forum decide them. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945 [131 L.Ed.2d 985] (*First Options*) [when applying the clear-and-unmistakable test, courts should not "interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power"].)

We also reject It Works's attempt to portray plaintiff as a sophisticated party, fully capable of tracking down, reading and comprehending the AAA Rules and Procedures, in particular, the rule delegating issues of arbitrability to the arbitrator. (See *Gostev, supra*, 88 Cal.App.5th at p. 1051 [" 'Although incorporation [of AAA arbitration rules] by reference may fairly be deemed a clear and unmistakable delegation where there are sophisticated parties, a different result may obtain where one party is unsophisticated' "].) Plaintiff is a college-educated, professionally trained nurse. However, plaintiff attests that she does not have the sort of legal or business acumen that would have empowered her to understand the "rather arcane" issue of " 'who (primarily) should decide arbitrability' . . . ." (*First Options, supra*, 514 U.S. at p. 945 ["A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers"].)

9

Moreover, putting aside the Arbitration Agreement, even the AAA Rules and Procedures themselves do not contain clear and unmistakable language of an intent to have arbitrability issues delegated to the arbitrator. The AAA Rules and Procedures merely state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (American Arbitration Association, Employment Arbitration Rules and Mediation Procedures, rule 6(a).) Thus, these rules do not even mention courts, much less purport to strip them of their traditional authority to rule on their own jurisdiction. (*Ajamian, supra*, 203 Cal.App.4th at p. 790 [the language in the AAA rules "tells the reader almost nothing, since a court *also* has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so, particularly if litigation has already been commenced"]; *Beco, supra*, 86 Cal.App.5th at pp. 305–306 [same]; *Mondragon, supra*, 101 Cal.App.5th at pp. 606–607 ["The [AAA] rule permits the arbitrator to rule on jurisdictional objections, but does not remove the court's authority to (also) determine arbitrability issues"].)

On this record, there is no clear and unmistakable evidence plaintiff agreed to delegate questions of arbitrability to an arbitrator when she executed the Distributor Agreement.

## III. *Procedural and Substantive Unconscionability.*

It Works next challenges the trial court's unconscionability finding. An arbitration agreement is subject to revocation if it is unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 98.) "An evaluation of unconscionability is highly dependent on context. [Citation.] The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or

10

contract provision. (Civ. Code, § 1670.5, subd. (b); [citations].) . . . The ultimate issue . . . is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911–912 (*Sanchez*).)

Unconscionability has both a procedural and a substantive element. While the procedural element focuses on " ' "oppression" or "surprise" ' " due to unequal bargaining power, the substantive element focuses on " ' "overly harsh" or "one-sided" ' " results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) " 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*)

## A. Procedural Unconscionability.

Here, the procedural unconscionability element is met because the Arbitration Agreement was "adhesive," meaning it was offered to plaintiff, the weaker party, on a "take it or leave it" basis without offering her any opportunity to negotiate its terms. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174, 185.)

It Works concedes the Arbitration Agreement was adhesive but insists it nonetheless was not procedurally unconscionable because plaintiff, a college-educated, professionally employed nurse, is a "sophisticated party" who "did not have to enter into this agreement . . . ." (See *Rodriguez v.*

11

*Superior Court* (2009) 176 Cal.App.4th 1461, 1470 [the adhesive nature of a contract is not dispositive].) We disagree with It Works.

It Works has never claimed plaintiff could have opted out of the Arbitration Agreement or negotiated the Distributor Agreement either without an arbitration agreement or with one with more favorable terms. Nor was plaintiff required to prove so. "[I]n the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions." (*Sanchez, supra*, 61 Cal.4th at p. 914; see *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 473–474 [an arbitration clause contained in an independent contractor agreement was adhesive and procedurally unconscionable when assent to the agreement was a precondition to getting hired]; *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [an arbitration agreement was oppressive where the parties' unequal bargaining power resulted in "no real negotiation and 'an absence of meaningful choice' "].)

Moreover, however advanced plaintiff's nursing education and training may be, as already noted, there is no evidence she had the requisite business or legal training to comprehend the myriad terms and conditions of an arbitration agreement buried on page 24 of the 37-page Policies and Procedures document, which was only accessible by a hyperlink in the Distributor Agreement, and which itself contained another hyperlink to a Web site with additional rules established by a separate organization (the AAA). (See *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1242, 1252–1253 (*Higgins*) [significant procedural unconscionability existed where arbitration clause was buried in 24-page, single-spaced document and "[a]lthough petitioners were required to place their initials in boxes adjacent

12

to six other paragraphs, no box [for initials] appeared next to the arbitration provision"]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 [procedural unconscionability present when "[t]he customer is forced to go to another source to find out the full import of what he or she is about to sign—and must go to that effort *prior* to signing"].)

Accordingly, we conclude the adhesive nature of the Arbitration Agreement together with its obscured placement within a lengthy hyperlinked document suffice to establish procedural unconscionability, such that we must now " 'scrutinize the substantive terms of the [agreement] to ensure they are not manifestly unfair or one-sided.' " (*Sanchez, supra*, 61 Cal.4th at p. 915; accord, *Dennison, supra*, 47 Cal.App.5th at p. 211.)

## B.     Substantive Unconscionability.

"Mutuality is the ' "paramount consideration" ' in assessing substantive conscionability" since " ' "[a]greements to arbitrate must contain at least ' "a modicum of bilaterality" ' to avoid unconscionability." ' " (*Gostev, supra*, 88 Cal.App.5th at p. 1056.)  Indeed, as the California Supreme Court recently held, the " 'presence of a modicum of bilaterality will not save a clause that is, in practical effect, unjustifiably one sided.' " (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 499 (*Ramirez*).)  Here, the trial court correctly found numerous provisions of the Arbitration Agreement lacked this requisite mutuality.

For example, a carveout provision (§ 8.4) ostensibly permits either party to apply to a court to obtain "a temporary restraining order, preliminary or permanent injunction, or other equitable relief to safeguard and protect its intellectual property rights, trade secrets, and/or confidential information, including but not limited to enforcement of its rights under the non-solicitation provision of the Agreement."  Yet, these court-allowed claims

13

are much more likely to be brought by a corporate party such as It Works than an individual such as plaintiff.  As a result, as other courts have recognized, any benefit flowing from this type of provision to plaintiff is really "nothing more than a chimera" given that the odds of her pursuing a carved-out claim is "so small as to be negligible." (*Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080; see *Ramirez, supra*, 16 Cal.5th at pp. 497–500 [arbitration agreement was substantively unconscionable to the extent it compelled arbitration of claims employees were most likely to bring while exempting those claims such as intellectual property theft or trade secret disclosure that employers were most likely to bring].)

Similarly, a damage limitation provision in the Arbitration Agreement states that the parties waive all claims for incidental, consequential, exemplary and punitive damages for claims brought under the agreement with the exception of two types of claims more likely to be brought by a corporation than an individual, to wit, "claims alleging the breach of the non-solicitation or confidentiality provisions contained in these Policies" (§ 8.7). Thus, while the provision may appear neutral, it is not.  And another damage provision is more blatantly one-sided.  If plaintiff or another distributor raises a claim for "wrongful termination" of her "business," she is only entitled to recover liquidated damages (§ 8.7).  Collectively, these provisions afford It Works the "unilateral ability to avoid results it d[oes] not like," which in turn undermines our state's policy of encouraging arbitration as an inexpensive, speedy, and yet fair forum for dispute resolution.  (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1073.)  "Although parties may justify an asymmetrical arbitration agreement when there is a 'legitimate commercial need' [citation], that need must be 'other than the employer's desire to

maximize its advantage' in the arbitration process." (*Ibid*.) It Works has provided no such justification.

Equally problematic, the Arbitration Agreement requires plaintiff to indemnify It Works for any costs, expenses or damages the company incurs as a result of or related to her work for the company (§ 8.6) yet imposes no reciprocal indemnification obligation on It Works. Several courts have rejected this type of indemnification provision. (E.g., *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 825 [agreement requiring plaintiffs to indemnify "GeoEx" for its costs and fees for defending covered claims and imposing no reciprocal obligation on GeoEx created "a potent disincentive for an aggrieved client to pursue any claim, in any forum—and may well guarantee that GeoEx wins even if it loses"]; *Gostev, supra*, 88 Cal.App.5th at p. 1058.)

We also have concerns about the provisions requiring the parties to bear their own costs and expenses, including legal and filing fees, related to the arbitration (§ 8.4), and requiring the parties to equally share all costs and expenses, including travel expenses, for a mandatory prearbitration mediation for disputes of $10,000 or more (§ 8.3). Both the mandatory prearbitration mediation and the arbitration must be held in Florida, and the arbitrator must apply Florida substantive law (§§ 8.3, 8.4).

With respect to the cost provisions, under California law, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz, supra*, 24 Cal.4th at pp. 110–111, italics omitted.) While the issue of whether plaintiff qualifies as an It Works employee remains

15

unresolved, we have already held the Arbitration Agreement is adhesive in nature. As such, *Armendariz* forbids the provisions requiring plaintiff to travel to Florida for a prearbitration mediation and then to return to Florida for arbitration if the mediation is unsuccessful since they impose significant expenditures on plaintiff that she would not incur in bringing a court action. (See *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1056, 1064–1065 (*Ramos*) [applying *Armendariz*'s unconscionability analysis when, regardless of whether plaintiff, a law partner, qualified as an employee of the defendant law firm, the record established defendant was "in a superior bargaining position vis-à-vis [plaintiff] akin to that of an employer–employee relationship"].)

Moreover, plaintiff's claims are based on alleged *California Labor Code* violations of an employee's right to, among other things, be paid all earned wages, receive timely meal and rest breaks, and obtain reimbursement for all business expenses. (See §§ 201–204, 210, 226.7, 510, 512, 1194, 1197–1198, 2800, 2802.) California courts will not enforce a mandatory forum selection provision if doing so " 'would substantially diminish the rights of California residents in a way that violates our state's public policy.' "[3] (See *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147–150 [refusing to enforce a Texas forum selection clause because it would deprive the employee of unwaivable Labor Code rights in violation of state policy]; see also *Ramos, supra*, 28 Cal.App.5th at p. 1057 [arbitration agreement could not legally

---

[3] Section 925, subdivision (a) provides: "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . : [¶] (1) Require the employee to adjudicate outside of California a claim arising in California [or] . . . [¶] (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California."

16

require the plaintiff to forfeit unwaivable statutory rights that she sued to enforce].)

It Works barely attempts to justify these provisions. Instead, It Works claims whether they are unconscionable is a moot issue because It Works is willing to stipulate that any arbitration will be held in California and governed by California substantive law, and that It Works will pay the entire cost of any arbitration. It Works is also willing to sever the damage limitations and indemnification provisions. This strategy does not work. As *Armendariz, supra*, explains, "[s]uch a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' " (24 Cal.4th at p. 125; accord, *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1535–1536, fn. omitted.)

Lastly, the Arbitration Agreement requires the parties to maintain confidentiality as to "[t]he substance of" plaintiff's claims (§ 8.4). Plaintiff contends this provision is substantively unconscionable because it prevents her from gathering evidence to present her PAGA claims. It Works insists the provision is permissible. We agree with plaintiff.

As *Ramos* explained, an agreement such as this one that requires an individual plaintiff to keep all aspects of the arbitration secret unreasonably favors the corporate defendant in several ways, including by precluding the plaintiff from informally contacting or interviewing any witnesses outside the formal discovery process, increasing the plaintiff's discovery costs, and discouraging potential plaintiffs from filing suit to vindicate unwaivable statutory rights in the first place.[4] (*Ramos, supra*, 28 Cal.App.5th at pp.

---

[4] It Works's authority (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398) was not a representative action

17

1066–1067.)  As such, the confidentiality provision in addition to the provisions discussed *ante* are substantively unconscionable.

## IV.  *Decision Not to Sever Unconscionable Provisions.*

When, as here, a court finds as a matter of law that a contract or any clause of a contract is unconscionable, the court may refuse to enforce the contract or clause, or it may limit the application of any unconscionable clause so as to avoid any unconscionable result.  (Civ. Code, § 1670.5, subd. (a).)  It Works contends the court abused its discretion by refusing to enforce the Arbitration Agreement because it could have simply severed the unconscionable provisions.  We disagree.

" ' "In deciding whether to sever terms rather than to preclude enforcement of the provision altogether, the overarching inquiry is whether the interests of justice would be furthered by severance; the strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." [Citation.] [¶] An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision.' " (*De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 492–493, overruled on another ground in *Ramirez, supra*, 16 Cal.5th at pp. 505–506.)

Under this standard, "no bright-line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term.  Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term.  Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified.  At the outset, a court should ask whether 'the central purpose of the contract is tainted

---

brought under PAGA to vindicate unwaivable statutory rights, such as this one, and is therefore inapposite.

18

with illegality.' (*Armendariz, supra*, 24 Cal.4th at p. 124.)  If so, the contract cannot be cured, and the court should refuse to enforce it.  If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. (See *Armendariz, supra*, 24 Cal.4th at pp. 124–125.)  If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose.  (*Little v. Auto Stiegler, Inc.*[, *supra*,] 29 Cal.4th [at p.] 1075; see also *Armendariz*, at p. 124; [citation].)  If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract.  (*Mercuro, supra*, 96 Cal.App.4th at p. 185; see *id.* at pp 185–186.)  Courts cannot 'rewrite agreements and impose terms to which neither party has agreed.' " (*Ramirez, supra*, 16 Cal.5th at p. 516.)

As discussed, the Arbitration Agreement contains numerous unfair and one-sided provisions, suggesting a deliberate attempt by It Works to impose arbitration on plaintiff and other distributors as an inferior forum that would work to the company's advantage.  As such, the trial court would have had to rewrite the Arbitration Agreement by severing a significant number of its provisions and adding new ones to remove the unconscionable taint.  The trial court acted well within the scope of its discretion in declining to do so, since the Arbitration Agreement falls far short on conscionability in so many regards.  (See *Gostev, supra*, 88 Cal.App.5th at pp. 1062–1063 [no abuse of discretion to decline to sever and enforce an arbitration agreement that was one-sided, unfair, and designed to discourage claims being brought by

19

unsophisticated parties]; *Beco, supra*, 86 Cal.App.5th at p. 313, quoting *Armendariz, supra*, 24 Cal.4th at p. 124 [no abuse of discretion to refuse to sever terms when " 'multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage' "].)  Accordingly, we affirm.

## DISPOSITION

The order denying It Works's motion to compel arbitration is affirmed. Plaintiff is entitled to costs on appeal.


Jackson, P. J.


WE CONCUR:

Burns, J.
Chou, J.